381 Mich. 582 (1969)
165 N.W.2d 1
In re ADOPTION OF KNOX.
KNOX
v.
REID.
Calendar No. 4, Docket No. 51,902.
Supreme Court of Michigan.
Decided March 3, 1969.
*583 James Thomas Sloan, Jr., and Jerry J. O'Connor, for plaintiff.
Warner, Norcross & Judd (Thomas J. McNamara and Conrad A. Bradshaw, of counsel), for defendants.
ADAMS, J.
This case, commenced August 31, 1964, challenges the validity of adoption proceedings completed on July 17, 1917. A decree is sought declaring the 1917 order confirming the adoption to be void.
Franklin Mallette was born November 13, 1909, to Edith Knox Mallette and Jay Elmer Mallette. His mother died shortly thereafter. In 1911, Franklin was adopted by W. Frank Knox and Annie Reid Knox, his uncle and aunt. The validity of those proceedings is not questioned. The boy was mentally incompetent. He lived a short time with his adoptive parents and was then placed in the home of his maternal grandparents, William E. and Sarah C. Knox.
In 1917, grandmother Sarah joined in articles of adoption with Frank Knox and Annie Knox. Sarah declared her adoption of Franklin, age 7, and Frank and Annie Knox expressly consented thereto. William, the husband of Sarah, did not sign the articles of adoption.
The curious circumstances of this second adoption are explained in a letter from Colonel Frank Knox to his mother dated May 2, 1917:
"Dear Mother:
"Your letter has just come and as I may be ordered to Plattsburg any day I am answering at once. No, *584 Mother, I am not seeking to avoid any responsibility. All I am trying to do is to exercise that responsibility to the best of my judgment. My judgment is that Frankie ought to go to a school next fall specically equipped and designed to handle backward nervous children. Both Emma and Sadie agree with me in this and you must understand that my authority is final and must be acceded to. Frankie ought not to lack special care and instruction any longer and if I remain his legal father that instruction will begin next fall. You needn't fear that he will be sent anywhere but to a school where the teachers are trained to get the very best and very most out of him. The only reason I suggested your taking my place as his legal guardian was to give you a chance if you wanted it to keep him with you  a course which all three of us, Emma, Sadie and I, and I rather think Elizabeth, agree is not best for Frankie.
"Now, Mother, this thing must be decided  I know you hate to face it  but it must be decided now. I am going away to the war and I cannot leave any loose ends behind me. Please write me at once that you agree next fall Frankie shall go to school and never fear but that the schooling and training and care given him will be the best that money can buy.
 "With love to all,
 Yours faithfully,
 FRANK."
The character of Sarah Knox is revealed in two short excerpts from a deposition given by her daughter, Sarah K. Reed, on November 26, 1965, when Mrs. Reed was 82 years old. She testified in part as follows:
"Q. Who owned the house at 165 Fountain street?
"A. It was in my mother's name, I think.
"Q. Did it come to her through her family, or through money which she had separately?
"A. Yes, through her own efforts.
*585 "Q. Did she work?
"A. No, but she sold real estate and was interested in making money. She always made money. She bought old houses and fixed them up, put new foundations or painted them, or something. My mother was very smart.
"Q. Have you ever discussed with anyone at any time the fact that as alleged in the present court proceedings, your father apparently did not join with your mother in the adoption of Frankie in 1917?
"A. There's nothing to that. He took Frankie, just as well as he could. My mother did the business, and she'd be the natural one to adopt the child. We think that was an oversight on his part, not that he didn't want to sign it. He didn't do it, because he was down town at business, and wasn't where he could easily do it. Mother took care of the boy and his wants, always.
"Q. Did your father take care of him as a son after your mother died?
"A. Yes, as much as he ever had, more, maybe."
Franklin lived with his grandparents. Sarah died in 1918. In her will she made provision for Franklin, to whom she referred as "my adopted son."
Thereafter, the boy was cared for by his aunt, Elizabeth Knox, and by his grandfather, William E. Knox, until his death in 1933. In 1928, grandfather Knox, describing himself as Franklin's "foster father," petitioned the Kent county probate court that Franklin, then 18, be sterilized and admitted to the Michigan Home and Training School because of his feebleminded condition. He was sterilized but continued to live with his grandfather and aunt.
*586 Colonel Frank Knox died in 1944, leaving an estate of approximately $2,000,000. His will made his widow, Annie Knox, the chief beneficiary of his estate. On February 2, 1945, Elizabeth Knox became guardian of the estate and person of Franklin Mallette Knox by order of the probate court of Kent county. She was authorized to accept a declaration of trust which established a $50,000 trust fund from the Frank Knox estate with monthly payments of $150 for Franklin's benefit and, as his guardian, to execute a release to the estate and to the widow, Annie Knox. This was done.
On September 22, 1958, Annie Knox died in Florida, leaving an estate in excess of $600,000. It was duly administered and distributed and order approving same was entered in the probate court for Dade county, Florida, on March 8, 1963. The trustees of Alma College, Carol Reid Martin, Laura Reid, Robert Lawrence Reid and Aubin Gallant, together with the other beneficiaries under the will of Annie Reid Knox, are named as defendants in the present case.
Plaintiff claims that chapter 64 of the judicature act of 1915[*] did not permit the adoption of a minor child by a married person alone and that the probate court had no jurisdiction in 1917 to enter an order of confirmation of the adoption because the husband of Sarah Knox did not sign the articles of adoption or consent to them on the record. Plaintiff claims that the order of confirmation was therefore void from its inception.
The trial judge concluded:
"that Sarah Knox, a married woman, could adopt the child as `her' child; that the probate court had jurisdiction of the adoption proceedings and that lack of jurisdiction does not appear upon the record; *587 that William Knox did not attack or object to the adoption, but on the contrary recognized its validity during the remainder of his life; and that Franklin Mallette Knox cannot attack the validity of the adoption."
Upon appeal to the Court of Appeals, that Court in the case of Knox v. Reid (1967), 8 Mich App 199, affirmed the trial court and, after pointing out that there was no evidence whatsoever of fraud, further stated (p 203):
"In In re Leach (1964), 373 Mich 148, an attempt to set aside an adoption for fraud was unsuccessful, the Court relying, in part, on its `extreme reluctance' to set aside adoptions. This same policy is expressed in CL 1948, § 701.23 (Stat Ann 1962 Rev § 27.3178 [23]), which provides:
"`When the validity of any order or decree of a probate court shall be drawn in question in any other suit or proceeding, everything necessary to have been done or proved to render the order or decree valid, and which might have been proved by parol at the time of making the order or decree, and was not required to be recorded, shall, after 20 years from such time, be presumed to have been done or proved, unless the contrary appears on the same record.'
"The 1917 order confirming adoption does not affirmatively indicate on its face any basis for asserting the order's invalidity. Forty-seven years passed before a claim of invalidity was made. The extrinsic proofs offered by appellant cannot now affect the 1917 order."
Numerous questions have been posed by counsel upon this appeal. They involve the construction of chapter 64 of the Michigan judicature act of 1915 as pertaining to the right of a married person alone to adopt a minor child, probate court jurisdiction, standing of an adopted person to challenge his own *588 adoption on the ground that the spouse of his adopting parent failed to join in the adoption, laches, estoppel by reason of a release executed by an incompetent's guardian and, finally, the effect of CL 1948, § 701.23 (Stat Ann 1962 Rev § 27.3178[23]), quoted by the Court of Appeals.
Without in any way expressing disagreement with the trial judge or the Court of Appeals, we base our affirmance upon a holding that the above cited statute is controlling here.
The articles of adoption filed with the probate court in 1917 recite that Sarah C. Knox resides in the city of Grand Rapids and declare that Franklin Mallette Knox, the minor adopted son of Frank Knox and Annie Knox, seven years of age, is adopted by her, Sarah, with the intent to make him her heir and to thereafter bear the name of Frank Mallette Knox. The articles expressly state the consent of Frank Knox and Annie Knox, as foster parents, to the adoption. The written signatures of Sarah, Frank, and Annie appear on the instrument, each acknowledged before a notary public.
The petition filed by Sarah C. Knox does not show that she was a married woman. It is silent as to her marital status. The articles of adoption filed by Sarah C. Knox indicated that she, and she alone, intended to adopt Frank Mallette Knox. In each instance in which the word "we" appeared in the probate form, the plural reference had been crossed out and replaced with the singular. In the July 17, 1917, order confirming adoption, the same adjustments had been made in the printed form. In order to determine whether Sarah C. Knox was, in fact, legally married to William Knox at the time the articles of adoption were filed, it would be necessary for this Court to look beyond the probate records relating to the adoption.
*589 The flaw in plaintiff's contention is that the adoption proceedings in and of themselves do not support plaintiff's claim. The articles of adoption are silent as to the marital status of Sarah. Nothing on the probate record shows her to be a married woman. Plaintiff must resort to extrinsic evidence to establish that fact. More than 20 years having elapsed since the date of the adoption proceedings, plaintiff is foreclosed by the presumption of validity imposed by the statute since nothing to the contrary appears on the record. See, also, Slattery v. Hartford-Connecticut Trust Co. (1931), 254 Mich 671, and In re Miner Estate (1960), 359 Mich 579.
If further reason were needed to sustain the policy of the statute, this case furnishes abundant illustration. Here an adoption proceeding is sought to be set aside after 47 years. There was full recognition of the proceeding by the second adoptive parent during her lifetime and in her will, by her spouse during his lifetime, and by collateral relatives. A declaration of trust for the benefit of Franklin was accepted by his guardian and a release was executed by the guardian to the estate of the first adoptive father and to Annie Knox, the first adoptive mother. All of the extrinsic evidence in this case tends to support the adoption. Assuming we were to accept plaintiff's interpretation of the judicature act, there is only one fact to the contrary  the failure of the husband of Sarah C. Knox to join in the adoption proceedings. We need not and do not determine the extent to which chapter 64 of the judicature act of 1915 requires that married adopting parents both join in an adoption proceeding under the statute. As stated by the Court of Appeals, the 1917 probate court proceedings here under challenge are regular on their face. The presumption of the statute being applicable, it is conclusive.
*590 The Court of Appeals is affirmed. Costs to appellee.
T.E. BRENNAN, C.J., and DETHMERS, KELLY, BLACK, and T.M. KAVANAGH, JJ., concurred.
T.G. KAVANAGH, J., took no part in the decision of this case.
NOTES
[*] CL 1915, §§ 14138-14144.  REPORTER.