I. Leo G-lassbr, J.
The petitioners are the paternal grandparents of two infant children who were born to their deceased son and the respondent, their former daughter-in-law. On June 14, 1974 they moved in the Supreme Court, Bungs County by writ of habeas corpus as a prelude to their desire for visitation with their grandchildren and the Supreme Court transferred the proceeding to this court to hear and determine. By that transfer, this court obtained the necessary jurisdiction to determine whether the .petitioners should be granted visitation. (Boscia v. Boscia, 42 A D 2d 781.)
*948 The relief which the petitioners 'seek is predicated upon section 7-2 -of the Domestic Relations Daw which provides as follows : ‘ ‘ Where either -or both of the parents of a minor child, residing within this state, is or -are deceased, a grandparent or the grandparents of such child, who is or are the parents of such deceased parent or parents, may .apply to the 'supreme court for a writ of habeas corpus to have s-uch child brought before such court; /and ion the return thereof, the court, iby -order, after due notice to the parent or any other person or party having the care, custody and control of such child, to be given in -such manner .as the court -shall prescribe, may make such directions as the best interest 'of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.”
The respondent married the petitioners’ son -on April 23,1966. Their first child, Donna, was bom to them on July 11, 1967, and the second child, Vincent, was born on May 28,1968. The father of these children died on July 17, 1969. Shortly after his death the respondent moved with her children to the home of her parents. -She was ¡supported, in part, by public assistance, receiving no financial help from the petitioners.
The respondent discovered, after the death of her husband that he had not paid1 income taxes and made no payments towards social -security for three years prior to his demise. -She proceeded to obtain the necessary information -concerning the deceas-ed’-s earnings, and with the financial assistance -of her father paid all back taxes -and other sums necessary to enable her to receive death benefits for herself and her children. The respondent continued to reside with her parents for a period of 14 months. Although cordial relations existed between them, the petitioners never vi-sited the children while they resided at the home of their maternal grandparents.
The -respondent remarried in February, 1971. Her present husband is a New -York City policeman who adopted the children. An order of adoption issued by the -Surrogate of Kings County and entered ion February 3,1972 was received in evidence. The respondent and her present husband subsequently had another child who is now five months -old.
After their son died, the petitioners saw itheir grandchildren approximately three -or four times each year through the year 1971. The respondent terminated visitation thereafter because she testified, the children (and particularly the older child, Donna) were being upset by being told by the petitioners that their deceased son was the real father -and that the respondent’s present -husband w-as not. Having observed the parties in the *949 courtroom -and having carefully listened to -and evaluated their testimony, the court accepts the testimony of the respondent as true. The petitioners admitted that they have never spoken to the respondent’s present husband .-although he has been married to their former daughter-in-law for nearly four years. The petitioners admitted that they -had no knowledge that the children were -adopted by the respondent’s present husband .although the order of adoption was entered nearly three years ago. Indeed, the father of the children was not even named -as a respondent in this proceeding. At one point in his testimony, the petitioner grandfather emotionally declared that he would never regard the respondent’s husband, the .adoptive father, as the father of the children. The petitioners last saw their grandchildren on -one occasion in 1972. Two ye-ars elapsed before this proceeding was instituted.
The respondent contends that the order of adoption superseded the right granted to the petitioners by section 72 of the Domestic Relations Law. That issue was recently considered by the Appellate Division, Fourth Department in Matter of Scranton v. Hutter (40 A D 2d 296) which decided that an adoption does not preclude/the petitioners from instituting this proceeding.
Prior to the enactment of -section 72 .of the Domestic Relations Law in 1966, grandparents had no standing to -assert rights of visitation -against the custodial parent. The statute was designed to -confer upon them such standing and to establish the procedure fo.r making their application. Whether that application .should be granted1 rests -solely in the discretion of the court. The ¡application may be denied if the court concludes that to grant it would not be in the best interest of the grandchildren. (Matter of Scranton v. Hutter, supra, p. 297.)
The relationship between the petitioners and the respondent and her present husband, the father of these children (see Domestic Relations Law, § 117) is regrettably, one which is filled with acrimony. The tension -and hostility enveloped the courtroom. The -absence of even the slightest semblance of civility between the parties or their capacity for evincing it is reflected in the failure -of the petitioners to even attempt to speak -or acquaint themselves with the respondent’s husband who has been married to their former daughter-in-law for nearly four years.
In the course of its opinion in Matter of Scranton v. Mutter (supra), the court -relied in part on Matter of Zook (62 Cal. 2d 492), in which -an executor appealed from an -order which, *950 because certain -of decedent’s grandchildren had been adopted by their stepfather, fixed the inheritance tax on bequests to those grandchildren as if such bequests had been made to strangers: It was not a case in which 'the issue of visitation presented by this proceeding was present. In deciding that there was no necessarily complete correlation between probate law and tax law, the court -observed (.-6-2 Cal. 3d 492, 494-496, supra): “ Unquestionably the substitution iof -adoptive for natural parents serves a great number of social . objectives. On the -other hand the law should not -and cannot ignore the fact that .an -adopted person may riot in many respects be cut -off from his natural family. If affection and regard remdins between members of a natural family, the law should not in the name of consistency undertake to thwart the expression of those feelings when the encouragement thereof does not hinder the adoptive relationships ” (emphasis added).
The ‘1 consistency ’ ’ to which reference is made, is consistency between the probate law -and the tax 1-aw -of the State -of California and not between adoptive and natural relationships. In any event, there was no evidence of affection -and regard between members of the natural family. Indeed, the record reveals the contrary. The record is -also clear that to encourage such a relationship in- this case would hinder the -adoptive relationship. It might also be that to encourage -such ,a relationship in a case such 'as this w-ould serve -as -a deterrent to adoptions. (See People ex rel. Levine v. Rado, 54 Misc 2d 843; People ex rel. Herman v. Lebovits, 66 Misc 2d 830.)
In Matter of Noll v. Noll (277 App. Div. 286) paternal grandparents -sought visitation with their grandchild who was residing with his widowed mother. Although the case antedates -section 7-2 of the Domestic Relations Law the -opinion of the court is instructive for its- incisive reasoning (p. 288): “ Can it be doubted -that during her husband’s lifetime 'and assuming the parents were living together, that the grandparents could not have- enforced visitation against -the joint will of the parents? * * * The father’s authority -and will are no longer in existence. The -authority and will of the father cannot, by ,-any means-, -and certainly not by -a court be transferred -to grandparents. ’ ’
The logical force of that observation is unassailable, particularly in this case where- the parents -of the children are living together and visitation rights are sought to be enforced against their joint will by the petitioners. The court went on to say (p. 289): “It follows, therefore, that here, where the mother *951 is ithe proper, natural land legal custodian of the child, unwilling to have visitation by the petitioners, and the welfare, contentment, peace of mind and happiness of the child do not make it essential to have continued contact with the grandparents, that the court cannot interfere simply to better the moral and temporal welfare of the child as against an unoffending parent, even if such a result would be accomplished. In this case we do not believe it would be accomplished even if the court had the power to order it.” (See, also, People ex rel. Marks v. Grenier, 249 App. Div. 564, affd, 274 N. Y. 613; People ex rel. Schachter v. Kahn, 241 App. Div. 686; Shriver v. Shriver, 7 Ohio App. 2d 169 ; Succession of Reiss, 46 La. Ann. 347; Commonwealth ex rel. Flannery v. Sharp, 151 Pa. Super. Ct. 612; Commonwealth ex rel. McDonald v. Smith, 170 Pa. Super. Ct. 254.)
Could it possibly be in the best interest of the children to compel their mother and father to observe a visitation regime imposed :by the court when they, the custodial parents, are opposed to it? Could it possibly be in the best interest of the children to have them become victims of paralyzing loyalty conflicts, 'assuming they have any sense of loyalty towards the petitioners? Could it possibly be in the best interest of the children .to order visitation with the petitioners who for nearly four years made no effort to know the man who was rearing their grandchildren .and never spoke with him? Could it possibly be in the best interest of the children to -order visitation with the petitioners who did not know that their grandchildren were adopted almost three years ago and made no effort to find .out? Could it possibly be in the best interest of the children to compel them to visit with the petitioners whom they have not seen for two years and who waited two years to institute this proceeding? To ask the questions is to -answer them and the petition is, therefore dismissed.
Mindful that ‘1 an over-speaking judge is no well tuned cymbal ” I am nevertheless moved to make the following observation. If affection and regard remains between members of the family there would be no need to invoke section 72 -of the Domestic Delations Law. That statute would be called into play only in a case such as this where the relationship between grandparents and parents is a hostile one. Under those circumstances the views expressed in Matter of Noll v. Noll (277 App. Div. 286, supra) are compelling. Sentimental reasons might prompt continued contact between children -and grandparents but, I believe ties of nature would prove far more *952 effective in restoring kindly family relations than coercive measures that must follow judicial intervention. I would suggest that the Legislature give serious consideration to the advisability of repealing section 72 of the Domestic Relations Law.