BIKOS v NOBLISKI

Docket No. 78-28. Submitted November 8, 1978, at Detroit.—Decided
    January 16, 1979.

Michael and Antoinette Nobliski were married and the parents of
    two young children when Antoinette died. Michael Nobliski
    remarried and his present wife formally adopted the two chil-
    dren. Florence Bikos, Antoinette's mother, commenced an ac-
    tion against Michael Nobliski under a statute which allows for
    enforcement of visitation of grandchildren by grandparents
    upon the death of the grandparent's child. The complaint
    alleged that her visitations with the children were being inter-
    fered with. The Wayne Circuit Court, Roman S. Gribbs, J.,
    ordered that Florence Bikos be allowed periodic visitations.
    Nobliski appeals, alleging that the trial court erred because the
    plaintiff's cause of action under the grandparent-visitation
    statute was terminated by the stepmother's formal adoption of
    the children, and that even if the cause of action were not
    extinguished, the order allowing visitation was not in the best
    interests of the children. *Held:*

    Upon adoption, an adopting parent stands in law in all
    respects as though the adopted child had been born to the
    adopting parent, and is thus, at law, a natural parent. There-
    fore, the condition of the grandparent-visitation statute, that
    the child's natural parent be deceased, no longer exists, and the
    grandparent has no standing to enforce visitation under the
    statute.

    Reversed.

1. ADOPTION — PARENT AND CHILD — INFANTS — STATUTES —
    NATURAL PARENTS.

    The effect of Michigan's adoption statute is to make an adopted
    child as much as possible a natural child of the adopting
    parent, and to make the adopting parent as much as possible

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Adoption § 84.
[2] 2 Am Jur 2d, Adoption § 85.
[3] 2 Am Jur 2d, Adoption § 83.

the natural parent of the child (MCL 710.60; MSA 27.3178[555.601]).

2. ADOPTION — GRANDPARENTS — PARENT AND CHILD — INFANTS — VISITATION — DECEASED PARENT — STATUTES.

A natural grandparent may, by statute, request visitation of his or her grandchild where the child's natural parent, a child of the grandparent, is deceased; however, if a surviving parent remarries and the stepparent adopts the child, the natural grandparent has no standing under the statute because the adopting parent becomes in law the natural parent of the child and the condition of the grandparent-visitation statute, that the child's parent be deceased, is no longer present (MCL 722.27a; MSA 25.312[7a]).

3. ADOPTION — PARENT AND CHILD — INFANTS — NATURAL PARENTS — ADOPTIVE PARENTS — POLICY.

The Michigan adoption scheme expresses a policy of severing, at law, the prior natural family relationships and creating a new and complete substitute relationship after adoption.

*Merrill, Tatham & Rosati,* for plaintiff.

*John D. Lazar* and *Nussbaum, McEvoy & Adler,* for defendant.

Before: ALLEN, P.J., and R. M. MAHER and J. E. TOWNSEND,* JJ.

ALLEN, P.J. What effect does the adoption of a child have on the child's grandparent's suit to secure court-enforced visitation with the child pursuant to the grandparent visitation statute, MCL 722.27a; MSA 25.312(7a)? On this issue of first impression the lower court concluded that a grandparent could maintain an action for visitation under the statute, after adoption. We reverse.

Deborah Nobliski, born July 16, 1970, and Richard Nobliski, born June 16, 1972, were the two children born to defendant and Antoinette Nobli-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ski during their marriage. In April, 1975, Antoinette Nobliski died. Antoinette was the daughter of plaintiff. Defendant married his present wife, Sarah, in July, 1975, and she formally adopted defendant's two children in September, 1976. Defendant always maintained custody of the two children except for a time prior to their natural mother's death when she and defendant were separated. Antoinette Nobliski had primary custody of the children at that time.

After the death of Antoinette Nobliski, plaintiff grandmother demanded visitation with the children. Attempts were made to allow visitation, but defendant and Sarah Nobliski, the stepmother, felt the plaintiff was creating divisiveness in their family, undermining their authority over the children and confusing and harming the children. Plaintiff commenced suit under MCL 722.27a; MSA 25.312(7a), and claimed her visitations were being interfered with. She never contended that defendant and his wife ever inadequately cared for the children. The court granted her temporary limited visitation. The children later underwent psychiatric examinations resulting in recommendations that if there were to be visitation, then it should take place in the home environment of the children and be limited to two hours per month. After concluding that plaintiff's suit was brought properly, the lower court held a hearing to determine what visitation, if any, was in the best interests of the children. At the close of the hearing on November 17, 1977, the court ordered visitation for a two-hour period at defendant's home on the third Saturday or Sunday of each month for three months, and thereafter the court ordered visitation for at least four hours per month away from defendant's home.

Defendant, as surviving parent and natural fa-

ther of the children, contends the lower court erred in concluding that adoption of the children did not terminate plaintiff's cause of action under the grandparent-visitation statute. Defendant also contends that, even if the plaintiff's grandparent-visitation suit survived the adoption, the court's decision that grandparent visitation was in the best interest of the children was clearly erroneous and against the great weight of the evidence.

The grandparent visitation statute was added to the Child Custody Act of 1970 by 1971 PA 80. The statute provides:

"If either the father or mother of an unmarried child is deceased, a parent of the deceased person may commence an action, by complaint or complaint and motion for an order to show cause, in the circuit court of the county in which the child resides for visitation of the child during its minority. If the court finds that such visitation would be in the best interests of the child, it may provide for visitation of the child by general or specific terms and conditions." MCL 722.27a; MSA 25.312(7a).

The only case in which this Court considered the statute was *Kernozek v Hershey*, 46 Mich App 393; 208 NW2d 242 (1973). In *Kernozek*, where a denial of the grandparents' request for visitation was affirmed, adoption of the children was not an issue. Also important in this case is the effect of subsection 1 of § 60 of the Adoption Code, MCL 710.60; MSA 27.3178(555.60):

"(1) After the entry of the order of adoption, the adoptee shall, in case of a change of name, be known and called by the new name. The person or persons adopting the adoptee shall thereafter *stand in the place of a parent* or parents to the adoptee in law *in all respects as though the adopted person had been born to*

*the adopting parents* and shall thereafter be liable for all the duties and entitled to all the rights of parents." (Emphasis supplied.)

Subsection 2 of this statute primarily deals with an adopted person's rights as an heir.[1] The effect-of-adoption statute was amended in 1974, as part of an extensive revision of the Michigan Adoption Code. 1974 PA 296. Upon amendment, the Legislature divided the statute into two subsections and eliminated an adopted person's status as an heir of the natural parents after adoption.

In the case before us, the lower court reasoned that the Legislature must have foreseen a situation such as the instant one, *viz:* where an adopting parent and the remaining natural parent desire to exclude the parents of the deceased natural parent. The lower court concluded that if the Legislature intended to exempt such cases from the ambit of the grandparent-visitation statute, it would have done so expressly.

As noted by the lower court, this same reasoning was employed by a New York intermediate appellate court in *Scranton v Hutter,* 40 App Div 2d 296; 339 NYS2d 708 (1973). In that case the New York court held that the natural, maternal grandparents could maintain an action under New York's grandparent-visitation statute despite the adoption of the children by the stepmother, and remanded for a hearing on the best interests of the children. The New York grandparent-visitation

---

[1] "(2) After entry of the order of adoption there shall not be any distinction between the rights and duties of natural progeny and adopted persons, and the adopted person shall become an heir at law of the adopting parent or parents, and an heir at law of the lineal and collateral kindred of the adopting parent or parents. After entry of the order of adoption, the adopted person shall no longer be an heir at law of his or her natural parents, except that a right, title, or interest vesting before entry of the final order of adoption shall not be divested by that order." MCL 710.60; MSA 27.3178(555.60)

statute is essentially the same as Michigan's.[2] However, New York's effect-of-adoption statute[3] has a focus different from Michigan's. The New York statute focuses on descent and succession. The *Scranton* court quoted part of the statute and described it as follows:

"Section 117 of the Domestic Relations Law, which defines the effect of adoption upon natural and adoptive family ties, is comparable to section 257 of the California Probate Code. It states in part (subd. 2): 'This section shall apply only to the intestate descent and distribution of real property' and is thus essentially a succession statute as is section 257 of the California Probate Code.'"[4] 40 App Div 2d at 299; 339 NYS2d at 711.

The Michigan effect-of-adoption statute focuses on more than just succession. Inheritance and succession are primarily covered in subsection 2 of the statute. Subsection 1, quoted earlier, focuses on the rights and status of the adopting parent or parents, as well as of the adoptee. The effect of the statute is to make the adopted child as much as possible a natural child of the adopting parents, and to make the adopting parents as much as possible the natural parents of the child. The statute specifically provides that the adopting parents "stand in the place of a parent * * * in all

[2] New York Domestic Relations Law § 72. The New York statute refers to "visitation rights" but the Michigan statute never describes the grandparents' interest as a "right".

[3] New York Domestic Relations Law § 117.

[4] The reference to the California statute arose from the New York court's reliance on *Roquemore v Roquemore,* 275 Cal App 2d 912; 80 Cal Rptr 432 (1969). *Roquemore* dealt with a factual situation similar to that in the instant case and in *Scranton.* The *Roquemore* court held that the adoption of the children did not prevent grandparent visitation under the statute. But the California adoption statute was much more a "succession statute" than either the Michigan or New York statute.

respects as though the adopted person had been born to the adopting parents" and are "entitled to all the rights of parents". Language as specific as this does not appear in the New York or California statutes. But in Michigan, adoption must be preceded by the release or termination of parental rights with respect to any living natural parent who is not the spouse of the adopting parent. MCL 710.28, 710.29, 710.36, 710.37, 710.41, 710.51; MSA 27.3178(555.28), 27.3178(555.29), 27.3178(555.36), 27.3178(555.37), 27.3178(555.41), 27.3178(555.51).

Our reading of the grandparent-visitation statute in conjunction with the effect-of-adoption statute leads us to conclude that once the stepparent adopts the child, the grandparent-visitation statute ceases to apply. The Legislature did not have to expressly exempt adoption situations, as the lower court concluded, if it did not want the visitation statute to apply to cases such as the one at bar. The interplay of the Michigan adoption and visitation statutes already accomplishes this.

Under the visitation statute a grandparent may request visitation where the grandchild's parent (the grandparent's child) is deceased. But once a child is adopted, the child has a parent. The adopting parent becomes the natural parent of the child "in law in all respects". Hence, the condition of the visitation statute that the child's parent be deceased is not present as a matter of law, and the natural grandparent has no standing under the statute.

This conclusion requires no sophisticated legerdemain. It follows from a straightforward reading of the statutes involved. To reach the opposite result, urged by plaintiff, would lead to some unusual situations which we doubt the Legislature intended. First of all, a grandchild could easily end

up with three sets of grandparents. If both natural parents died this could result in four sets of grandparents. Second, if a child is adopted through a social agency, and the natural mother or father, or both, later died, then the parent of the natural parent could request visitation under the statute. Since neither the effect-of-adoption statute nor the grandparent-visitation statute is limited to situations where one natural parent retains custody, this result is possible under plaintiff's position.

Third, the surviving parent and the adopting parent could exclude either or both of their own parents at will, but could not do so as to the parents of the deceased spouse. This further leads to the fact that the adopting parent would not have the right to preclude certain persons (the natural grandparents) from visitation as did the natural parent. And this is directly contrary to the intent of the effect-of-adoption statute, MCL 710.60; MSA 27.3178(555.60), under which adopting parents "stand in the place of a parent * * * in all respects * * * " and are "entitled to all the rights of parents".

Research reveals a number of states whose courts have reached the same result as we do. *Poe v Case,* 565 SW2d 612 (Ark, 1978); *Browning v Tarwater,* 215 Kan 501; 524 P2d 1135 (1974); *Smith v Trosclair,* 321 So 2d 514 (La, 1975); *Matter of Fox,* 567 P2d 985 (Okla, 1977); *Deweese v Crawford,* 520 SW2d 522 (Tex Civ App, 1975). Although the statutory language varies from state to state, for the most part these cases arose from remarkably similar situations.

Of course, there are courts which support plaintiff's position. New York[5] and California cases

---

[5] *Scranton v Hunter,* 40 App Div 2d 296; 339 NYS2d 708 (1973), overruled two prior lower court decisions. *State ex rel Herman V*

already have been mentioned and distinguished. Other cases include *Mimkin v Ford,* 66 NJ 426; 332 A2d 199 (1975), and *Graziano v Davis,* 50 Ohio App 2d 83; 361 NE2d 525 (1976). The *Graziano* court dealt with an Ohio adoption scheme which does not sever the relationship with the natural family nearly so clearly as do Michigan's statutes. The effect-of-adoption statute dealt with by the New Jersey court in *Mimkon v Ford, supra,* was primarily a succession statute. It was apparently designed for "children requiring placement for adoption" and went so far as to provide for continuation of rights as to the natural parent if the adoption was consensual. The Michigan adoption scheme expresses a policy of severing, at law, the prior, natural family relationships and creating a new and complete substitute relationship after adoption.

We hold that the effect of the grandparent-visitation statute terminates once a child has a complete family as evidenced by the formality of adoption. This does not mean that the natural grandparents can never visit their grandchildren. It does mean that whether such visitation is to occur is a decision left to the natural parent and the adopting parent, just as it is left to the natural parents when they are both alive. Nor does our decision mean that the best interests of the child are not provided for. The Child Custody Act of 1970, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.;* permits a change of custody if it will be in a child's best

*Lebovits,* 66 Misc 2d 830; 322 NYS2d 123 (1971); *People ex rel Levine v Rado,* 54 Misc 2d 843; 283 NYS2d 483 (1967). A subsequent lower court decision, *Geri v Fanto,* 79 Misc 2d 947; 361 NYS2d 984 (1974), decided the issue contrary to the *Scranton* court. The Court of Appeals of New York was confronted with a case where it was unnecessary to decide the issue, but the court noted in *dicta* that the grandparents had no "absolute or automatic right of visitation". *Lo Presti v Lo Presti,* 40 NY2d 522; 387 NYS2d 412; 355 NE2d 372 (1976).

interest.[6] A parent, state agency, or third person (including a grandparent) may sue under this act. MCL 722.25; MSA 25.312(5). If the care of a child becomes egregious, criminal sanctions apply. See Chapter XX of the Penal Code, MCL 750.135 *et seq.;* MSA 28.330 *et seq.*

Because of our analysis and decision we need not reach defendant's second issue of whether the lower court erred or abused its discretion in finding that visitation was in the best interests of the children here involved.

The lower court's decision is reversed, and the order of visitation is vacated. No costs, a public question being involved.

---

[6] We note in passing that it will be a very rare case where damage to children done by the acrimony present between the parties where a court must order visitation (and if the parties must come to court, then the acrimony is undoubtedly present) will be outweighed by the benefits of visitation, the artificial nature of which must be evident even to children, and therefore be in the children's best interests. *See* discussion in *Mimkon v Ford,* 66 NJ 426; 332 A2d 199 (1975), dissenting opinion, and *Geri v Fanto,* 79 Misc 2d 947; 361 NYS2d 984 (1974).