## *In re* ADAMS

Docket No. 126726. Submitted December 19, 1990, at Lansing. Decided April 3, 1991; approved for publication May 22, 1991, at 9:05 A.M.

James B. Jennings and Sharan R. Selleck petitioned the Kalamazoo County Probate Court to adopt Molly Marie Adams, the adult child born to them during their marriage. After Jennings and Selleck divorced, Jennings married his present wife, W. Rose Ann Makowski, and Selleck married Phillip D. Adams, who adopted Molly Adams after she reached the age of majority. Selleck then divorced Phillip Adams and married her present husband, William Logan. Makowski and Logan joined in the petition for purposes of consent. The court, Donald R. Halstead, J., denied the petition, holding that two married persons who are not married to each other cannot adopt the same person, even if that person is their natural daughter. The petitioners appealed.

The Court of Appeals *held:*

The probate court properly interpreted the controlling statute. MCL 710.24(1); MSA 27.3178(555.24)(1) limits the group of persons eligible to adopt to single persons and to married persons jointly with their spouses. The statute requires that both spouses to a marriage must petition to adopt, thereby precluding Jennings and Selleck, who are married, but not to each other, from adopting Molly Adams jointly.

Affirmed.

DOCTOROFF, J., concurring, stated that, while the decision was correct, the result in this case is harsh, and urged the Legislature to amend the statute to provide the probate court discretion to grant adoption petitions where all interested parties consent.

ADOPTION — ADOPTION BY MARRIED PERSONS.

The Adoption Code limits the group of persons eligible to adopt to single persons and to married persons jointly with their

REFERENCES

Am Jur 2d, Adoption § 10.
See the Index to Annotations under Adoption of Children.

spouses; two married persons who are not married to each other may not adopt the same person (MCL 710.24[1]; MSA 27.3178[555.24][1]).

*Kreis, Enderle, Callander & Hudgins, P.C.* (by *Pamela D. Price*), for the petitioners.

Before: SULLIVAN, P.J., and DOCTOROFF and MURPHY, JJ.

PER CURIAM. In a case of first impression, petitioners appeal as of right from a judgment entered by the Kalamazoo County Probate Court which denied their petition for James Bruce Jennings and Sharan Rae Selleck to adopt their adult daughter, Molly Marie Adams, born November 3, 1962. The probate court ruled that although Jennings and Selleck are the natural parents of Molly Adams, they could not petition to adopt her pursuant to MCL 710.24(1); MSA 27.3178(555.24)(1) because they were both married to other parties, rather than to each other. We affirm.

Molly Marie Adams is the natural daughter of petitioners Jennings and Selleck, who were married to each other at the time of Molly's birth. Later, they were divorced and Selleck married Phillip D. Adams, who adopted Molly. This apparently occurred in 1987, after Molly had reached the age of majority. Selleck's marriage to Phillip Adams eventually ended in divorce, and she later married her present husband, petitioner William Logan. In the meantime, Jennings married his present wife, petitioner W. Rose Ann Makowski.

The present action was commenced because Molly, her natural parents, and their respective spouses all desire that Molly again become the legal daughter of both of her natural parents. MCL 710.24(1); MSA 27.3178(555.24)(1) provides:

*If a person desires to adopt a child or an adult*
and to bestow upon the adoptee his family name,
*or to adopt a child or an adult* without a change of
name, with the intent to make the adoptee his
heir, *that person, together with his wife or her
husband, if married, shall file a petition with the
probate court* of the county in which the petitioner
resides or where the adoptee is found. [Emphasis
added.]

Petitioners argue that the probate court should
have granted their petition to adopt because all
interested parties, that is, Molly and her natural
parents and both of their spouses, had joined in
the petition and consented to the proposed adop-
tion. Petitioners conclude that this is technical
compliance with the terms of § 24 and that the
probate court's refusal to grant their petition was
an abuse of discretion. The probate court, however,
construed § 24 to require that when a married
person petitions to adopt a child or an adult, the
married person's spouse must also petition to
adopt the adoptee. Therefore, the court concluded
that it had no authority to allow two married
persons who are not married to each other, such
as petitioners Jennings and Selleck, to adopt the
same person, regardless of the fact that she is
their natural daughter. We agree.

The jurisdiction, powers, and duties of the pro-
bate court are prescribed by and may not exceed
that which is conferred by statute. *In re Kasuba
Estate,* 65 Mich App 25; 236 NW2d 751 (1975).
Proceedings in probate court must strictly comply
with the terms of the authorizing statute. *In re
Milner's Estate,* 324 Mich 269; 36 NW2d 914
(1949). The entire subject of adoption is governed
solely by statute. *In re Leach,* 373 Mich 148; 128
NW2d 475 (1964). Jurisdiction over adoption pro-
ceedings is conferred upon the probate court in

chapter X of the Probate Code, known as the Adoption Code, MCL 710.21 *et seq.*; MSA 27.3178(555.21) *et seq.*

Although adoption has been practiced since ancient times, a right of adoption was not recognized by the common law. *In re Smith Estate,* 343 Mich 291; 72 NW2d 287 (1955). See also anno: *Adoption of adult,* 21 ALR3d 1012, § 2, p 1016; 2 CJS, Adoption of Persons, 414. As with any statute in derogation of the common law, the provisions of the Adoption Code must be strictly construed. See *Lincoln v Gupta,* 142 Mich App 615; 370 NW2d 312 (1985). Moreover, the provisions of the Adoption Code must be construed together as a whole. *In re Draime,* 356 Mich 368, 371; 97 NW2d 115 (1959).

After reviewing the provisions of the Adoption Code, we conclude that the probate court correctly construed the requirement of § 24 that both spouses to a marriage join in the petition to adopt as precluding petitioners Jennings and Selleck, who are married, but not to each other, from adopting their natural daughter Molly Adams.

As with all other aspects of adoption, the question of who may adopt is controlled by statute. It has generally been held that the spouse of an adopting party, other than a spouse who is the natural parent of the adoptee, is a necessary party to an adoption proceeding. Anno: *Required parties in adoption proceedings,* 48 ALR4th 860, §§ 2-3, pp 864-869. To that end, courts in other jurisdictions have concluded that the law does not recognize adoption by one spouse alone. When an adoption statute requires joinder of the petitioner's spouse, it is a joint petition, and, upon adoption, the adoptee becomes in law the child of both spouses and their relatives as if there had been a blood relationship. *Id.*

In the absence of a statutory prohibition, an unmarried person may adopt another person. However, it has been held inconsistent with the general scope and purpose of adoption statutes to allow two unmarried persons to make a joint adoption. 2 CJS §§ 14-15, pp 434-435. In *Adoption of Meaux,* 417 So 2d 522 (La App, 1982), the Louisiana Court of Appeals held that under a Louisiana adoption statute which allowed a single person or a married couple to adopt a child, the natural parents of a minor child, who were apparently living together but not married to each other, could not jointly adopt their natural child because they were neither "a single person" nor a married couple.

We have found only one Michigan case involving the issue whether the statutory requirement that a married person be joined by the married person's spouse in adoption proceedings precludes a married person alone from adopting a child or an adult. Unfortunately, in that case, neither the Supreme Court nor this Court addressed the issue, choosing instead to resolve the case on another basis. See *In re Adoption of Knox,* 381 Mich 582; 165 NW2d 1 (1969), aff'g *Knox v Reid,* 8 Mich App 199; 154 NW2d 3 (1967).

Nevertheless, we believe that the policy considerations which have motivated courts of other jurisdictions to hold that married persons must jointly adopt with their spouses is applicable to the Adoption Code. The Michigan adoption scheme expresses a policy of severing, at law, the prior, natural family relationship and creating a new and complete substitute relationship after adoption. *Bikos v Nobliski,* 88 Mich App 157; 276 NW2d 541 (1979). This policy is expressed in MCL 710.60; MSA 27.3178(555.60), which provides in pertinent part:

(1) After the entry of the order of adoption, the adoptee shall, in case of a change of name, be known and called by the new name. *The person or persons adopting the adoptee shall thereafter stand in the place of a parent or parents to the adoptee in law in all respects as though the adopted person had been born to the adopting parents and shall thereafter be liable for all the duties and entitled to all the rights of parents.*

(2) After entry of the order of adoption there shall not be any distinction between the rights and duties of natural progeny and adopted persons, and *the adopted person shall become an heir at law of the adopting parent or parents, and an heir at law of the lineal and collateral kindred of the adopting parent or parents.* After entry of the order of adoption, an adopted child shall no longer be an heir at law of a parent whose rights have been terminated under this chapter or chapter XIIA or the lineal or collateral kindred of that parent, *nor shall an adopted adult be an heir at law of a person who was his or her parent at the time the order of adoption was entered or the lineal or collateral kindred of that person,* except that a right, title, or interest vesting before entry of the final order of adoption shall not be divested by that order. [Emphasis added.]

Section 60, the effect of adoption statute, focuses not only on inheritance and succession but on the rights and status of the adopting parent or parents. The effect of § 60 is to make an adoptee as much as possible a natural child of the adopting parents and, significantly, to make the adopting parents as much as possible the natural parents of the adoptee. *Bikos, supra.* Obviously, this desired effect is of much greater concern when the adoptee is a minor child. Nevertheless, although issues of inheritance and succession are presumably the primary concern in the adoption of an adult, adult adoptees are not excluded from the scope of § 60.

Moreover, § 60(2), which relates to the subject of inheritance and succession, clearly contemplates that the adoptee's adopting parent or parents replace "a person who was his or her parent at the time the order of adoption was entered."

This clearly expressed intent to sever existing familial relationships is further supported by the fact that the 1974 revision of the Probate Code, embodied in 1974 PA 296, eliminated a provision in the original effect of adoption statute, MCL 710.9; MSA 27.3178(549), which allowed an adoptee to inherit from the adoptee's natural parents as well as from the adopting parents. We conclude that the language of the present statute clearly shows that the Legislature intended that an adoptee, whether an adult or minor child, sever the adoptee's prior legal family relationships upon adoption. Similarly, the fact that the joinder provision of § 24(1) applies to the adoption of both a child and an adult shows the Legislature's intent that, if a married person desires to adopt another person, the married person's spouse must also adopt that person.

We are troubled by the fact that this holding seems rather harsh and unyielding under the highly unusual facts of the present case. In truth, we see nothing unreasonable in petitioners' wish that Jennings again become his natural daughter's legal father. Moreover, under the Adoption Code, only the consent of the adoptee is required when the adoptee is an adult. MCL 710.43(3); MSA 27.3178(555.43)(3). We can think of no logical reason why an adult like Molly Adams should not be able to consent to be adopted by anyone she wishes.

However, we are also cognizant of the fact that there is nothing to prevent Jennings from developing a relationship with his daughter that involves

all of the emotional bonds inherent in a family, regardless of the legal formalities. Moreover, he may pursue other legal options to provide for her inheritance interest, if that is his concern. It is also reasonable to bear in mind that these parties' present predicament is of their own making. Clearly, the Legislature could not have foreseen the occurrence of the societal changes which have drastically altered our notions of what constitutes a "normal" family. To hold that the Adoption Code provides a remedy for petitioners' problem is to impute an intent to the Legislature that it is highly unlikely to have held. See *People v Gilbert*, 414 Mich 191, 203-204; 324 NW2d 834 (1982). We believe that the policy of providing a stable family relationship for an adoptee, which motivated the Legislature's choice to limit the group of persons eligible to adopt to single persons and married persons jointly with their spouses, remains valid even today. Any enlargement of that group must come from the Legislature and not this Court.

Affirmed.

DOCTOROFF, J. *(concurring)*. I concur in the result in this action. Pursuant to MCL 710.24(1); MSA 27.3178(555.24)(1), the natural mother and the proposed adopting natural father have filed a petition, consented to by their respective spouses and consented to by the adult proposed adoptee. The majority opinion has concluded that the statute involved requires the adopting parties to be married to each other. I agree that this is a correct interpretation of the law as presently written. I write separately to observe that, in this unique situation where all parties have consented to the sought adoption, and particularly where the one person who could possibly be harmed by the adoption, that is, the present wife of the natural father, has consented, the result is particularly harsh.

I urge the Legislature to consider amending the statute to provide the probate court the discretion to grant petitions where, as in this case, all interested parties consent.