*In re* SCHNELL

Docket No. 184509. Submitted October 3, 1995, at Lansing. Decided
    November 17, 1995, at 9:05 A.M.

Michael Sanchez petitioned the Midland County Probate Court
    for custody of Krystal L. Schnell, a minor, after receiving
    notice of a hearing for the termination of his parental rights to
    the child in conjunction with the child's adoption. Sanchez had
    been adjudged the child's father in a paternity action and had
    paid support for the child pursuant to court-ordered payroll
    deduction during the ninety days immediately preceding ser-
    vice of the notice of hearing. The court, Donna T. Morris, J.,
    acting pursuant to § 39(1) of the Adoption Code, MCL 710.39(1);
    MSA 27.3178(555.39)(1), found that it would not be in the
    child's best interest to grant custody to Sanchez and terminated
    Sanchez' parental rights. Sanchez appealed.

    The Court of Appeals *held:*

    Section 39(2) of the Adoption Code, MCL 710.39(2); MSA
    27.3178(555.39)(2), provides that if a putative father has pro-
    vided support for the child during the ninety days before notice
    of the hearing for termination of parental rights was served
    upon him, his parental rights shall not be terminated except by
    proceedings in accordance with § 51(6) of the Adoption Code,
    MCL 710.51(6); MSA 27.3178(555.51)(6), or § 2 of Chapter XIIA
    of the Revised Judicature Act, MCL 712A.2; MSA
    27.3178(598.2).

    In this case, given that Sanchez had provided support for the
    child during the ninety days before the service of the notice of
    the hearing for termination of his parental rights, his parental
    rights could be terminated only in accordance with § 51(6) of
    the Adoption Code or § 2 of Chapter XIIA of the Revised
    Judicature Act. The probate court erred in terminating his
    parental rights pursuant to § 39(1) of the Adoption Code.

    Reversed.

REFERENCES
Am Jur 2d, Adoption §§ 112, 113, 116.
See ALR Index under Adoption of Children.

ADOPTION — TERMINATION OF PARENTAL RIGHTS — PAYMENT OF
   SUPPORT BY PUTATIVE FATHER.

   The payment of voluntary or court-ordered support for a child by
   its putative father during the ninety days immediately preced-
   ing service on the putative father of a notice of a hearing for
   the termination of parental rights in conjunction with the
   child's adoption requires that the termination of parental
   rights be in accordance with § 51(6) of the Adoption Code or § 2
   of Chapter XIIA of the Revised Judicature Act; termination of
   the parental rights of such father may not proceed under
   § 39(1) of the Adoption Code (MCL 710.39[1], 710.39[2],
   710.51[6], 712A.2; MSA 27.3178[555.39][1], 27.3178[555.39][2],
   27.3178[555.51][6], 27.3178[598.2]).

*C. M. Cameron,* for Michael Sanchez.

*Karen E. Flores,* for Krystal L. Schnell.

Before: WAHLS, P.J., and SMOLENSKI and R. C.
KAUFMAN,* JJ.

SMOLENSKI, J. Petitioner Michael Sanchez ap-
peals as of right a probate court order terminating
his parental rights to Krystal Leigh Schnell, a
minor. We reverse and remand.

The dispositive issue in this case is whether the
word "support," as used in § 39(2) of the Adoption
Code, MCL 710.21 *et seq.;* MSA 27.3178(555.21) *et
seq.,* includes an order of income withholding. We
hold that it does.

Section 39 provides in relevant part as follows:

   (1) If the putative father does not come within
the provisions of subsection (2), and if the putative
father appears at the hearing and requests custody
of the child, the court shall inquire into his fitness
and his ability to properly care for the child and
shall determine whether the best interests of the
child will be served by granting custody to him. If
the court finds that it would not be in the best
interests of the child to grant custody to the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

putative father, the court shall terminate his rights to the child.

(2) If the putative father has established a custodial relationship with the child or has provided *support* or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter[1] or section 2 of chapter XIIA.[2] [MCL 710.39; MSA 27.3178(555.39). Emphasis supplied.]

As explained in *In re Baby Boy Barlow,* 404 Mich 216; 273 NW2d 35 (1978), clarified 407 Mich 1165 (1980):

Section 39 of the code creates two categories of putative fathers and provides different standards for termination of the rights of each. Putative fathers who have established no custodial relationship with the child, and who have provided no support for the mother or child prior to the notice of hearing, may have their parental rights terminated if the court finds, after examining the father's fitness and ability to properly care for the child, "that it would not be in the best interests of the child to grant custody" to him. The parental rights of the second group, those who have established some kind of custodial or support relationship prior to the notice of hearing, are subject to

---

[1] As explained in *In re Clausen,* 442 Mich 648, 677, n 32; 502 NW2d 649 (1993):

This is the "stepparent adoption" section of the code, MCL 710.51(6); MSA 27.3178(555.51)(6), which permits the termination of a natural father's parental rights in certain circumstances.

[2] See MCL 712A.2; MSA 27.3178(598.2). Chapter XIIA "governs juveniles and the juvenile division of the probate court and permits termination of parental rights for abuse and neglect." *Clausen, supra* at 677, n 33.

termination only by proceedings under the general jurisdictional provisions of chapter 12A of the Probate Code. [*Id.* at 229.]

As further explained in *In re Clausen,* 442 Mich 648; 502 NW2d 649 (1993):

> [W]hile in many custody disputes Michigan does apply a best interests of the child test, there are circumstances in which we do not. For example, § 39 of the Adoption Code has a pair of provisions regarding the termination of parental rights of putative fathers who seek custody of a child . . . .
>
> There will be many cases in which the putative father meets the conditions that bring him within subsection 2, but in which someone else could make a persuasive showing that the best interests of the child require denying the father custody. Nevertheless, under the statute, the best interests standard of subsection 1 would not apply. [*Id.* at 677-678.]

In this case, Krystal Leigh Schnell was born on January 11, 1991. At that time, Krystal's mother, Jamie Schnell,[3] was fifteen or sixteen years old and unmarried, and petitioner was approximately twenty years old. In January 1992 and after blood tests had indicated that petitioner was Krystal's father, a circuit court order of filiation declaring petitioner's paternity was entered. This order also required petitioner to pay child support to Jamie Schnell, and provided for the entry of an order of income withholding. Commencing in early February 1992, child support payments were withheld from petitioner's paychecks.

In November 1994, Jamie Schnell placed Krystal with adoptive parents. In December 1994, petitioner was served with a "NOTICE OF HEARING

---

[3] Respondent Jamie Schnell is not a party to this appeal.

TERMINATION OF PARENTAL RIGHTS." In February 1995, petitioner petitioned the probate court for custody of Krystal. In March 1995, an evidentiary hearing was held at which it was established that petitioner had continued and was continuing to pay support for Krystal through the order of income withholding.

Following the hearing, the probate court issued a written opinion. The opinion stated that petitioner had not established a custodial relationship with Krystal pursuant to § 39(2). Petitioner does not contest this finding on appeal.

The probate court also determined that petitioner had not provided support or care for either Krystal or Jamie Schnell pursuant to § 39(2):

> There is no case law that this Court can ascertain to distinguish between support and care referenced in the Adoption Code and an income withholding support order. The Court views a "caring parent who naturally would wish to support his children both financially and emotionally." *In re Meredith,* 162 Mich App 19, [25; 412 NW2d 229] (1987).[4] Michael did not support Jamie through her pregnancy. He didn't seek out a blood test, but waited until the State paid for one. He paid no support for over a year. He testified when Jamie would ask him for financial help, he declined because he didn't believe her. His parents provided gifts and diapers for Krystal.
>
> Michael has supported Krystal with an income withholding order from the Court. This Court is not convinced Michael would provide support or care as envisioned by the statute without that order.
>
> This Court envisions a supporting and caring parent as required by the Adoption Code to be one

---

4 We note that *Meredith, supra* at 24-25, considered termination of a father's rights under § 51(6) of the Adoption Code, where the father, unlike in this case, had *failed to substantially comply with an order of support.*

somewhat similar, but not necessarily on all fours, to [*Stanley v Illinois,* 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1971)]. *Stanley,* [*supra*], was the first United States Supreme Court case to give putative fathers due process rights. Before that time only the consent of the mother was necessary to place an illegitimate child for adoption. Unlike the present case, *Stanley* [sic] had lived with the mother and their children for thirteen years. He had supported and cared for his children during those thirteen years. This was a supporting and caring custodial relationship.

Michael has not met the burden of MCL 710.39(2) [MSA 27.3178(555.39)(2)]. Therefore, under MCL 710.39(1) [MSA 27.3178(555.39)(1)], the Court must now determine if it is in the best interest of Krystal to grant custody to Michael.

After considering the best interests factors enunciated in § 22 of the Adoption Code, MCL 710.22; MSA 27.3178(555.22), the court found "by clear and convincing evidence, that it is in Krystal Schnell's best interest to deny custody to Michael Sanchez, putative Father."

Petitioner argues that the probate court erred in finding that he was not within § 39(2) where he had provided support for Krystal pursuant to the order of income withholding during the ninety days before the notice of the hearing was served on him. We agree.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). Nothing will be read into a statute that is not within the manifest intention of the Legislature as gathered from the act itself. *In*

*re Marin,* 198 Mich App 560, 564; 499 NW2d 400
(1993). The first criterion in determining intent is
the specific language of the statute. *House Speaker
v State Administrative Bd,* 441 Mich 547, 567; 495
NW2d 539 (1993). The Legislature is presumed to
have intended the meaning it plainly expressed.
*Frasier v Model Coverall Service, Inc,* 182 Mich
App 741, 744; 453 NW2d 301 (1990). As explained
in *Nat'l Exposition Co v Detroit,* 169 Mich App 25,
29; 425 NW2d 497 (1988):

> A cardinal rule of statutory construction is that
> courts may not speculate as to the probable intent
> of the Legislature beyond the words employed in
> the statute. A word or phrase in a statute is to be
> given its plain and ordinary meaning. . . . When
> the language of a statute is clear and unambigu-
> ous, judicial construction is neither required nor
> permitted. Such a statute must be applied, and not
> interpreted, since it speaks for itself.

Because the Adoption Code is in derogation of
the common law, its provisions must be strictly
construed. *In re Adams,* 189 Mich App 540, 543;
473 NW2d 712 (1991). Statutory interpretation is a
question of law that is reviewed de novo for error
on appeal. *Smeets v Genesee Co Clerk,* 193 Mich
App 628, 633; 484 NW2d 770 (1992).

In this case, the specific language of § 39(2) is
clear and unambiguous:

> If the putative father . . . has provided support . . .
> for either mother or child after the child's birth during
> the 90 days before notice of the hearing was served
> upon him, the rights of the putative father shall not be
> terminated except by proceedings in accordance with
> section 51(6) of this chapter or section 2 of chapter
> XIIA. [MCL 710.39(2); MSA 27.3178(555.39)(2).]

It is undisputed that petitioner had "supported

Krystal with an income withholding order from the Court" during the ninety days before he was served with notice of the hearing. Nothing in the statutory language suggests that the Legislature intended that only a certain kind or quality of support be considered in determining whether a father has "provided support" under § 39(2). Thus, we agree with petitioner that the court-ordered nature of the support is irrelevant in determining whether he "provided support" within the meaning of § 39(2). The probate court erred as a matter of law in engaging in judicial construction and interpretation of plain and unambiguous statutory language.

Our conclusion in this regard is bolstered by the language of § 51(6) of the Adoption Code, which provides as follows:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:
>
> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.
>
> (b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition. [MCL 710.51(6); MSA 27.3178(555.51)(6).]

The provisions of the Adoption Code must be construed together as a whole. *Adams, supra.* Section 51(6) specifically contemplates that a court may not terminate a father's rights under the applicable circumstances where the father has substantially complied with an order of support. Thus, our conclusion that the word "support" in § 39(2) includes court-ordered support is consistent with the Adoption Code as a whole.

Moreover, our conclusion that "support" includes court-ordered support in no way contradicts or impedes the purpose and object sought by the Adoption Code, which is "to establish procedures to provide for speedy resolution of disputes concerning a putative father's rights where placement of an illegitimate child for adoption is sought." *Barlow, supra* at 228-229.

Thus, because petitioner had "provided support" pursuant to § 39(2), the probate court erred in terminating his rights under the best interests standard enunciated in § 39(1). Rather, petitioner's rights cannot be terminated "except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA." MCL 710.39(2); MSA 27.3178(555.39)(2).

We reverse and remand for further proceedings consistent with this opinion.[5] We do not retain jurisdiction.

---

[5] In light of our disposition of this matter, we decline to consider respondent's remaining issue.