*In re* BALLARD

Docket No. 181450. Submitted April 17, 1996, at Grand Rapids. Decided October 8, 1996, at 9:25 A.M.

Stacey Ballard and Adoption Associates, Inc., petitioned the Ottawa County Probate Court for the termination of Jamie L. Bethel's parental rights to Brandon M. Ballard, the son of Stacey Ballard and Bethel, to allow the child's adoption. The court, Mark A. Feyen, J., determined that Bethel had not provided care or support for the mother or child within the meaning of MCL 710.39; MSA 27.3178(555.39), that Bethel was unfit and unable to properly care for the child, and that it would be in the best interests of the child to terminate Bethel's parental rights. Bethel appealed.

The Court of Appeals *held*:

1. Bethel's remittance of $200 from jail to the child's mother eight months after conception, seven months after the discovery of the pregnancy, and at the prompting of Bethel's mother did not constitute the kind of support that would entitle him to a parental rights termination proceeding under MCL 710.51(6); MSA 27.3178(555.51)(6) or MCL 712A.2; MSA 27.3178(598.2).

2. The probate court, in concluding pursuant to MCL 710.39(1); MSA 27.3178(555.39)(1) that it would not be in the best interests of the child to award custody of the child to Bethel, did not err in disregarding the possibility of custody and care of the child by Bethel's relatives. MCL 710.39; MSA 27.3178(555.39) and MCL 710.22; MSA 27.3178(555.22) make no provision for considering custody and care by relatives of the putative father when determining whether it would be in the child's best interests to grant custody to the father.

Affirmed.

MCDONALD, P.J., dissenting, stated that the order terminating respondent's parental rights should be reversed and the matter should be remanded for parental rights termination proceedings pursuant to MCL 712A.2; MSA 27.3178(598.2), concluding that MCL 710.39(1); MSA 27.3178(555.39)(1) must be strictly construed and that under a strict construction of MCL 710.39(1); MSA 27.3178(555.39)(1) Bethel's remittance to the child's mother constituted support.

1. ADOPTION — TERMINATION OF FATHERS' PARENTAL RIGHTS — PROVISION OF CARE OR SUPPORT.

Whether a father has provided the kind of support and the amount of support that is reasonable under the circumstances such that his parental rights to a child may be terminated by proceedings under MCL 710.51(6); MSA 27.3178(555.51)(6) or MCL 712A.2; MSA 27.3178(598.2) but not under MCL 710.39(1); MSA 27.3178(555.39)(1) must be determined case by case; factors to be considered include: the amount of money provided, the amount of money provided relative to the maintenance needs of the mother or child, the timing of the payments, the nature of any commitments to make such payments, the nature of any expectations regarding the receipt of such payments, the regularity of such payments, and other related circumstances.

2. ADOPTION — TERMINATION OF FATHERS' PARENTAL RIGHTS — PROVISION OF CARE OR SUPPORT — CHILDREN'S BEST INTERESTS.

The custody and care of a child by the relatives of the child's father who has not provided care or support to the child or the child's mother is not among the factors considered in determining whether it would be in the child's best interests to grant custody of the child to the father (MCL 710.22, 710.39; MSA 27.3178[555.22], 27.3178[555.39]).

*Black & Nicewander, P.C.* (by *Terry L. Berens*), for the petitioner.

*Stephen L. Haslett*, for the respondent.

Before: MCDONALD, P.J., and MARKMAN and C. W. JOHNSON,* JJ.

MARKMAN, J. Respondent Jamie L. Bethel appeals as of right the order terminating his parental rights. Respondent and petitioner Stacey Ballard are the biological parents of Brandon Michael Ballard, who was born on November 3, 1994. On November 4, 1994, petitioners filed a petition for a hearing to release parental rights so that Brandon could be placed for adoption. A hearing was held on November 22, 1994.

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

At the time of the hearing, respondent was serving a ten- to fifteen-year prison sentence that began in August 1994. The court ordered the termination of respondent's parental rights and that Brandon be placed with adoptive parents. We affirm.

On appeal, respondent claims that the probate court erroneously determined that he did not provide care or support for the mother or child pursuant to MCL 710.39; MSA 27.3178(555.39) despite evidence that he sent Stacey $200 in October 1994. Such a determination subjects a putative father to less rigorous termination procedures than would a determination that a father had provided care or support. This issue requires us to review both the probate court's statutory interpretation and its factual determination that respondent did not provide support. "Statutory interpretation is a question of law that is reviewed de novo for error on appeal." *In re Schnell,* 214 Mich App 304, 310; 543 NW2d 11 (1995). This Court reviews factual findings with respect to termination of parental rights under the clearly erroneous standard. MCR 5.974(I); *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989).

MCL 710.39; MSA 27.3178(555.39) states in pertinent part:

> (1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.

(2) If the putative father has established a custodial rela-
tionship with the child or has provided support or care for
the mother during pregnancy or for either mother or child
after the child's birth during the 90 days before notice of
the hearing was served upon him, the rights of the putative
father shall not be terminated except by proceedings in
accordance with section 51(6) of this chapter or section 2
of chapter XIIA.

In *In re Barlow*, 404 Mich 216, 229; 273 NW2d 35
(1978), the Court summarized the effect of the two
categories created by § 39:

The Adoption Code also provides substantive standards
for deciding when a putative father's rights may appropri-
ately be terminated. Section 39 of the code creates two cat-
egories of putative fathers and provides different standards
for termination of the rights of each. Putative fathers who
have established no custodial relationship with the child,
and who have provided no support for the mother or child
prior to the notice of hearing, may have their parental rights
terminated if the court finds, after examining the father's
fitness and ability to properly care for the child, "that it
would not be in the best interests of the child to grant cus-
tody" to him. The parental rights of the second group, those
who have established some kind of custodial or *support
relationship* prior to the notice of hearing, are subject to
termination only by proceedings under the general jurisdic-
tional provisions of chapter 12A of the Probate Code.
[Emphasis added.]

This Court recently addressed the issue of what
constitutes support under § 39 in *In re Gaipa*, 219
Mich App 80; 555 NW2d 867 (1996). The *Gaipa* Court
held at 84-86:

Because the quantum of "support or care for the mother
during pregnancy" necessary for a putative father to come
within the provisions of § 39(2) is unclear, judicial con-
struction is appropriate. . . .

As indicated by the Supreme Court in *Barlow, supra,* the group of putative fathers that comes within the provisions of § 39(2) do so because they have established some sort of custodial or support relationship with the child or mother. It seems clear that, in demanding such an established relationship, the Legislature must have intended more than an incidental, fleeting, or inconsequential offer of support or care and therefore must have intended more than "any" contribution by the putative father. Conversely, the Legislature's failure to require "substantial" or total support during the pregnancy — especially where other sections of the Adoption Code specifically contain such a "regular and substantial support" requirement, see e.g., MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a) — strongly suggests that the Legislature also did not intend that elevated standard to be applied in all cases and under all circumstances.

We are of the opinion that, by declining to require a certain and specific level of support or care for § 39(2) to apply, the Legislature rejected the notion of uniformly quantifying the adequacy of a putative father's support for the mother during pregnancy. Rather, it seems apparent that the Legislature intended that the courts determine case by case whether the father provided the kind of support and the amount of support that is reasonable under the circumstances of each particular case. [Citations omitted.]

Here, evidence indicated that respondent did not financially support Stacey while she was pregnant or contribute to the financial support of Brandon. Respondent and Stacey discovered that she was pregnant in March 1994. Respondent was arrested and jailed on April 27, 1994. Accordingly, he was not in prison throughout Stacey's entire pregnancy. The *only* financial contribution he made to Stacey and Brandon was two $100 money orders that he sent to Stacey from jail in October 1994. The funds for the money orders came from $500 from the sale of respondent's car that his mother placed in an account for him. He

testified that he and his mother decided together to send some of this money to Stacey.

The probate court held:

> It is my opinion that in the context of this case, given the lateness with which [the $200] arrived eight months after conception, seven months after discovery of the pregnancy, given the fact that [respondent] himself would not have arranged for that but for the insightful action of his mother in taking that money and securing it for him, that it is my opinion that that does not constitute support for the mother during the course of her pregnancy, which is basically how I read that requirement. Even though it is something, and, as I said, that's what makes it very close, it is, I guess, too little too late.

Under *Gaipa*, the mere payment of money is not the equivalent of "support." The $200 payment here constituted, at most, a token amount in the context of providing for the necessities of Stacey and the baby. Further, the payment was not provided in the context of any promise of continuing support. Indeed, respondent was incarcerated and spent the remaining funds from the sale of his car on attorney fees. Stacey and Brandon had received no prior support from respondent and had no expectation of further support from him. The payments were provided seven months after respondent learned that Stacey was pregnant. By respondent's own testimony, the payments were made at the behest of his mother. The timing of the payments indicates that they were solely designed to enhance respondent's position with respect to the termination of his parental rights rather than to contribute to the maintenance of Stacey or Brandon. This nominal, strategic payment does not "establish a support relationship." See *Barlow* at 229.

In determining whether a putative father has provided "the kind of support and the amount of support that is reasonable under the circumstances of [the] particular case," *Gaipa, supra,* the probate court may properly consider such factors as the amount of money provided, the amount of money provided relative to the maintenance needs of the mother or child, the timing of the payments, the nature of any commitments to make such payments, the nature of any expectations regarding the receipt of such payments, the regularity of such payments, and other related circumstances. Accordingly, respondent's payment here does not constitute "support" that would entitle him to a termination proceeding under MCL 710.51(6); MSA 27.3178(555.51)(6) or MCL 712A.2; MSA 27.3178(598.2). Therefore, we hold that the probate court did not clearly err in finding that respondent did not provide support under § 39(2) and that he was subject to termination of his parental rights in accordance with § 39(1).[1]

Respondent next claims that the probate court erred in determining that termination of his parental rights was in the best interests of Brandon. Specifi-

---

[1] Recently, in *In re Halbert,* 217 Mich App 607, 615-616; 552 NW2d 528 (1996), this Court reversed a termination of parental rights, holding:

Respondent's lengthy incarceration before the filing of the petitions for termination of his parental rights and for adoption—and, hence, his inability to earn a living and acquire the wherewithal to provide support for [the child]—take respondent outside the intended scope of MCL 710.51(6); MSA 27.3178(555.51)(6).

However, *Halbert* involved the application of § 51(6)(a), which specifically directs consideration of the parent's failure to support the child in the context of the parent's "ability" to do so. Section 39, unlike § 51(6)(a), does not mention "ability" to support but turns solely on whether support is provided, regardless of ability.

cally, he contends that the probate court erred in failing to consider the possibility of custody and care by his mother and stepfather during his incarceration. "Statutory interpretation is a question of law that is reviewed de novo for error on appeal." *Schnell* at 310.

The probate court concluded that provision for custody and care by relatives was not intended to be considered under § 39 and MCL 710.22; MSA 27.3178(555.22), which sets forth the "best interests" factors. It stated:

> The question of whether other persons (not the putative father or the noncustodial father), but other persons who would give him help and assistance, the question is what role do they play in all of this. And I think that question is answered by 22b [now § 22f] itself . . . . [In § 22] each of those 11 [factors] are stated as a comparison between the adopting persons and the putative father.
>
> \*     \*     \*
>
> [W]hen the noncustodial parent says I have really no ability to provide care for the child, but I'm offering a substitute for my care, that that's really outside the bounds of the statute, because the statute sets up this comparison between the adopting persons and the putative father.

With respect to a putative father who has not established a support relationship with the child, § 39 directs the court to inquire into "his fitness and his ability to properly care for the child" and to "determine whether the best interests of the child will be served by granting custody to him." Section 22(f) directs a court to compare the adopting persons and the putative father with respect to factors comprising the "best interests of the child." Sections 39 and 22 make no provision for considering alternative care and custody arrangements by an incarcerated puta-

tive father. The silence of the statutes regarding this issue is significant in contrast to MCL 712A.19b(3)(h); MSA 27.3178(598.19b)(3)(h), which provides that parental rights may be terminated where

> [t]he parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, *and the parent has not provided for the child's proper care and custody,* and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the age of the child. [Emphasis added.]

The Legislature could have inserted similar language in § 39 or § 22 if it intended for the court to consider such provisions by a putative father. As noted above, the Adoption Code is to be strictly construed. *Schnell* at 310. Section 22(f) specifically directs the court to determine the "best interests of the child" by comparing the adoptive parents and the putative father, not by comparing the adoptive parents with alternative custody provisions arranged by the putative father. We accordingly find no error in the probate court's conclusion not to consider respondent's alternative custody and care arrangements in determining Brandon's best interests under § 22.

For these reasons, we affirm the order terminating respondent's parental rights.

Affirmed.

C. W. JOHNSON, J., concurred.

MCDONALD, P.J. (*dissenting*). I would hold the probate court erred in terminating respondent's parental rights under § 39(1), MCL 710.39(1); MSA 27.3178(555.39)(1) rather than § 2 of chapter XIIA,

MCL 712A.2; MSA 27.3178(598.2), as required by § 39(2), MCL 710.39(2); MSA 27.3178(555.39)(2).[1]

As stated in the majority opinion, our Supreme Court in *In re Barlow*, 404 Mich 216; 273 NW2d 35 (1978), interpreted § 39 as creating two categories of putative fathers and providing different standards for termination of the rights of each. The first group is comprised of putative fathers who have established no "custodial relationship" with the child and who have provided no "support" for the mother or child before the notice of hearing for termination of parental rights. The second group consists of those putative fathers who have established *some* type of custodial or support relationship before the notice of hearing. The court further noted the statute provides for the termination of the parental rights of the second group only pursuant to the general jurisdictional provisions of chapter XIIA of the Probate Code.

In this case it is undisputed respondent provided $200 toward the support of the mother during her pregnancy and before the notice of hearing. This contribution constituted forty percent of respondent's total assets. The respondent was in prison during the pregnancy and delivery of the child and was unable to provide any additional support. Clearly this fact places respondent in the second group of § 39 described in *Barlow* because it constitutes some type of a support relationship, as opposed to the nonsupport of the first group of fathers.

---

[1] Section 51(6), MCL 710.51(6); MSA 27.3178(555.51)(6) would not apply to the adoption of a newborn baby because in order to terminate parental rights § 51(6)(b) requires the court to find the other parent having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so *for a period of two years or more before the filing of the petition.* (Emphasis added.)

The majority seems to be fashioning a third group, i.e., those putative fathers who have some type of a support relationship, but whose support is insufficient to meet the needs of the mother and child. Neither the language of the statute nor our Supreme Court's interpretation of the statute in *Barlow* recognizes such a group.

As stated by the majority, because the Adoption Code is in derogation of the common law, its provisions are to be strictly construed. The majority's opinion is not a strict construction of § 39(1) and (2). If the Legislature wanted to expand the meaning of "support" in § 39(2) as it did in § 51(6), MCL 710.51(6); MSA 27.3178(555.51)(6) it could have easily done so.

The majority's holding seriously undermines the stringent requirements for terminating parental rights under chapter XIIA by expanding the pool of putative fathers eligible for termination of their rights under the standard set forth in § 39(1). This determination is clearly contrary to the intent of the Legislature as interpreted by the Court in *Barlow*.

I would remand to the probate court and direct the termination proceedings be conducted pursuant to chapter XIIA, § 2 of the Probate Code.