*In re* DAWSON

Docket No. 210641. Submitted October 6, 1998, at Grand Rapids. Decided November 24, 1998, at 9:05 A.M.

Christine Dawson filed in the Ottawa Circuit Court, Family Court Division, a petition for a hearing to terminate Robert Emerson's parental rights to a child the parties conceived while dating. The parties had ended their relationship, in part, as a result of a difference of opinion regarding Dawson's desire to have an abortion. Dawson then decided that she would place the child for adoption and falsely told Emerson that he was not the father. When the adoption agency notified Emerson that Dawson had named him as the father, Emerson responded by filing a notice of intent to claim paternity. When the baby was born, it was turned over to the prospective adoptive parents, but Emerson was not informed of the birth by Dawson. Dawson then filed her petition, conditioning the release of her parental rights on the termination of Emerson's parental rights. The court, Wesley J. Nykamp, J., denied the petition to terminate Emerson's parental rights, finding that Emerson's filing of the notice of intent to claim paternity constituted support or care for purposes of MCL 710.39(2); MSA 27.3178(555.39)(2) and that, even if Emerson did not fall within subsection 39(2), pursuant to MCL 710.39(1); MSA 27.3178(555.39)(1), Emerson was fit and able to properly care for the child and it was in the best interests of the child to grant custody to Emerson. Dawson appealed.

The Court of Appeals *held*:

1. The court erred in ruling that a putative father's filing of a notice of intent to claim paternity constitutes the provision of support or care for the purpose of subsection 39(2). The error was harmless, however, because the court found that, even if Emerson did not fall within subsection 39(2), he was fit and able to properly care for the child and it was in the child's best interests to grant custody to Emerson.

2. The court properly examined Emerson's circumstances alone in evaluating the best interests of the child under subsection 39(1). The statute regarding the factors to be considered in determining the child's best interests, MCL 710.22(f); MSA 27.3178(555.22)(f), does not provide that the putative father's circumstances are to be

compared to the prospective adoptive individuals' circumstances when evaluating the best interests of the child under § 39.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — ADOPTION — PUTATIVE FATHERS — WORDS AND PHRASES — SUPPORT OR CARE.

A putative father's filing of a notice of intent to claim paternity under MCL 710.33; MSA 27.3178(555.33) does not constitute the provision of "support or care" for purposes of determining under MCL 710.39(2); MSA 27.3178(555.39)(2) whether the putative father has provided support or care.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — ADOPTION — PUTATIVE FATHERS.

A court that finds that a putative father does not fall within the provisions of MCL 710.39(2); MSA 27.3178(555.39)(2) must inquire into the putative father's fitness and ability to properly care for his child and determine under MCL 710.22(f); MSA 27.3178(555.22)(f) whether the best interests of the child will be served by granting custody to him; the putative father's circumstances must be examined alone, without comparison to prospective adoptive parents' circumstances, when determining the best interests of the child under § 39 (MCL 710.39[1]; MSA 27.3178[555.39][1]).

*Wesseling & Brackmann, P.C.* (by *Douglas J. Brackmann*), for Christine Dawson.

*Kristine J. Guthrie*, for Robert Emerson.

Before: CORRIGAN, C.J., and DOCTOROFF and FITZGERALD, JJ.

DOCTOROFF, J. Petitioner appeals as of right from an order of the Ottawa Circuit Court, Family Court Division, denying her petition to terminate respondent's parental rights pursuant to § 39 of the Adoption Code, MCL 710.39; MSA 27.3178(555.39). We affirm.

Petitioner and respondent began a dating relationship in March or April 1997. They planned to live together and began looking for a house. Soon thereafter, petitioner learned that she was pregnant. They discussed abortion, but decided to have, and raise,

the child. In August 1997, respondent applied for a mortgage, which was later approved. However, just before they were to close on the house, petitioner decided to have an abortion. By this time, respondent opposed the abortion and wanted petitioner to have the baby. In part, because of this difference of opinion, petitioner ended the relationship. As a result, respondent decided not to purchase the house. In September 1997, petitioner decided to place the baby for adoption. She falsely told respondent that he was not the father. In December 1997, the adoption agency notified respondent that petitioner had named him as the father. In January 1998, respondent filed a notice of intent to claim paternity. The baby was born on February 6, 1998, and was immediately turned over to the prospective adoptive parents. Petitioner did not inform respondent that the baby had been born.

Petitioner then filed a petition for a hearing to terminate respondent's parental rights, conditioning the release of her parental rights on the termination of respondent's parental rights. The hearing was held on February 27, 1998. The trial court found that, under the circumstances of this case, respondent's filing of the notice of intent to claim paternity constituted "support or care" for the purposes of subsection 39(2). The trial court went on to find that, even if respondent did not fall within subsection 39(2), pursuant to subsection 39(1), he was fit and able to properly care for his child, and it was in the best interests of the child to grant custody to him. Accordingly, the trial court denied the petition to terminate respondent's parental rights.

Petitioner first argues that the trial court erred in ruling that a putative father's filing of a notice of intent to claim paternity constitutes the provision of "support or care" for the purpose of MCL 710.39(2); MSA 27.3178(555.39)(2). We agree, but conclude that the error was harmless. This issue presents a question of law, which we review de novo on appeal. *In re Hamlet (After Remand)*, 225 Mich App 505, 521; 571 NW2d 750 (1997).

MCL 710.39; MSA 27.3178(555.39) provides, in part:

(1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.

(2) If the putative father has established a custodial relationship with the child or has provided support or care for the mother during the pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA.

As the Court stated in *In re Barlow*, 404 Mich 216, 229; 273 NW2d 35 (1978):

Section 39 of the code creates two categories of putative fathers and provides different standards for termination of the rights of each. Putative fathers who have established no custodial relationship with the child, and who have provided no support for the mother or child prior to the notice of hearing, may have their parental rights terminated if the

court finds, after examining the father's fitness and ability to properly care for the child, "that it would not be in the best interests of the child to grant custody" to him. The parental rights of the second group, those who have established some kind of custodial or support relationship prior to the notice of hearing, are subject to termination only by proceedings under the general jurisdictional provisions of chapter 12A of the Probate Code.

The test to determine whether a putative father has provided "support or care" for the mother or child is whether the father provided reasonable care under the circumstances of the case. *In re Gaipa*, 219 Mich App 80, 86; 555 NW2d 867 (1996). In determining whether the father has provided reasonable care under the circumstances, the court should consider factors such as the father's ability to provide support or care, the needs of the mother, the kind of support or care provided, the duration of the support, whether the mother impeded the father's efforts to provide her with support, and any other significant factors. *Id.* The support or care must be "more than an incidental, fleeting, or inconsequential offer of support or care," but need not rise to the level of "regular and substantial" support in all cases. *Id.* at 85.

The trial court determined that

[g]iven these unusual facts where the mother tells the father he is not the father and then names him as the father in the Notice to Putative Father and Custody Statement [MCL 710.37; MSA 27.3178(555.37)], and he responds by filing the Section 33 [MCL 710.33; MSA 27.3178(555.33)] Notice of Intent to Claim Paternity, we hold that the father comes within Subsection (2) of MCL 710.39 [MSA 27.3178(555.39)] as construed by *Gaipa, supra.*

The filing of a notice of intent to claim paternity is not "support or care" for the purposes of MCL 710.39(2); MSA 27.3178(555.39)(2). A notice of intent to claim paternity merely creates a rebuttable presumption of paternity for the purposes of the Paternity Act[1] and dependency or neglect proceedings under MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.* MCL 710.33(2); MSA 27.3178(555.33)(2). Nothing in § 33 or § 39 reflects that the Legislature intended the filing of a notice of intent to claim paternity to constitute support or care for the purposes of subsection 39(2).

Although the trial court erred in determining that respondent's filing of the notice of intent to claim paternity was sufficient evidence of "support or care" to satisfy subsection 39(2), the error was harmless because the trial court further found that, even if respondent did not fall within subsection 39(2), pursuant to subsection 39(1), respondent was fit and able to properly care for the child, and that it was in the child's best interests to grant custody to respondent.

Nevertheless, we feel compelled to express our concern that § 39 treats a putative father unfairly where, as in the instant case, the mother's actions prevent the putative father from providing support or care for the mother during the pregnancy or establishing a custodial relationship with the child. Here, petitioner told respondent that she planned to abort the child, later told him that he was not the father of the child, and then did not inform him when she gave birth to the child. In such a situation, we do not believe the putative father should be placed in the

---

[1] MCL 722.711; MSA 25.491 through MCL 722.730; MSA 25.510.

category of putative fathers who fall within subsection 39(1). However, because § 39, as written, does not account for such a situation, we must conclude in the instant case that respondent did not satisfy subsection 39(2).

Petitioner next argues that the trial court erred in ruling that, when determining the best interests of the child under subsection 39(1), the court should only examine the circumstances of the putative father, and should not compare the putative father to the prospective adoptive parents. We disagree. The interpretation of a statute is a question of law, which we review de novo on appeal. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995).

The primary goal of judicial interpretation of statutes is to ascertain the intent of the Legislature. *Id.* at 309. The first criterion in determining intent is the specific language of the statute. *Id.* at 310. The Legislature is presumed to have intended the meaning it plainly expressed, and when the language of a statute is clear and unambiguous, judicial construction is neither required nor permitted. *Id.* However, if a statute is ambiguous and reasonable minds can differ with regard to the meaning of the statute, judicial construction is permitted. *Id.* at 311. When construing a statute, the court must use common sense and should construe the statute so as to avoid unreasonable consequences. *Gaipa, supra* at 84-85. Because the Adoption Code is in derogation of the common law, it must be strictly construed. *Schnell, supra* at 310.

Subsection 39(1) clearly indicates that, when a putative father does not fall within the provisions of subsection 39(2), the court must "inquire into *his* fitness and *his* ability to properly care for the child

. . . ." Subsection 39(1) further provides that the court must determine whether it is in the best interests of the child to grant custody to the putative father. According to subsection 22(f) of the Adoption Code:

"Best interests of the adoptee" or "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court to be applied to give the adoptee permanence at the earliest possible date:

(i) The love, affection, and other emotional ties existing between the adopting individual or individuals and the adoptee or, in the case of a hearing under section 39 of this chapter, the putative father and the adoptee.

(ii) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, the putative father to give the adoptee love, affection, and guidance, and to educate and create a milieu that fosters the religion, racial identity, and culture of the adoptee.

(iii) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, the putative father, to provide the adoptee with food, clothing, education, permanence, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(iv) The length of time the adoptee has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(v) The permanence as a family unit of the proposed adoptive home, or, in the case of a hearing under section 39 of this chapter, the home of the putative father.

(vi) The moral fitness of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, of the putative father.

(vii) The mental and physical health of the adopting individual or individuals or, in the case of a hearing under sec-

tion 39 of this chapter, of the putative father, and of the adoptee.

(viii) The home, school, and community record of the adoptee.

(ix) The reasonable preference of the adoptee, if the adoptee is 14 years of age or less and if the court considers the adoptee to be of sufficient age to express a preference.

(x) The ability and willingness of the adopting individual or individuals to adopt the adoptee's siblings.

(xi) Any other factor considered by the court to be relevant to a particular adoption proceeding, or to a putative father's request for child custody. [MCL 710.22(f); MSA 27.3178(555.22)(f).]

Before subsection 22(f) (formerly subsection 22[b]) was amended by 1994 PA 222, it did not mention § 39. The amendment's addition of the language "or, in the case of a hearing under section 39 of this chapter," clarified the apparent legislative intent, that the putative father's circumstances be examined alone, without comparison to the prospective adoptive parents' circumstances, when determining the best interests of the child under § 39. The factors containing the language referring to § 39 indicate that the court is to consider those factors with respect to the adopting individual or individuals, "*or*, in the case of a hearing under section 39 of this chapter," the court is to consider the factors with respect to the putative father. The references in subsection 22(f) to the adopting individual or individuals are only relevant when the "best interests of the adoptee" are being considered for purposes other than § 39. Nothing in the language of § 39 or subsection 22(f) indicates that the putative father is to be compared to the prospective adopting individual or individuals when evaluating the best interests of the child under § 39. If the Legislature

had intended such a comparison it could have easily stated that the putative father is to be compared with the prospective adoptive parents. We also note that the interpretation urged by petitioner cannot be applied in cases where adoptive parents have not yet been found.

Moreover, to require a comparison between the putative father and the prospective adoptive parents would be unfair and unreasonable. Where a putative father appears in court desiring custody of his child and is found to be fit and able to properly care for his child, he should not be required to compete with individuals who wish to adopt his child. Specifically, in the instant case, where it was petitioner's conduct that kept respondent from his child, we do not believe that respondent should have to compete with the prospective adoptive parents. Accordingly, we conclude that if the court determines that the father is fit and able to raise his child, the court should then determine, by considering the father's situation alone, whether the best interests of the child are satisfied by placing the child with the father or by terminating the father's parental rights and placing the child for adoption.

Petitioner relies on *In re Ballard*, 219 Mich App 329, 336-337; 556 NW2d 196 (1996), in which this Court stated that subsection 22(f) directs a court to compare the putative father with the adopting person or persons to determine the best interests of the child under § 39. The relevant issue in *Ballard* was whether a putative father's provision of custody and care by relatives while he was in prison could be considered under § 39 and § 22 of the Adoption Code. *Ballard, supra* at 336. In *Ballard*, the hearing to terminate the

respondent's parental rights was held before the effective date of the amendment of § 22 by 1994 PA 222, and the probate court's decision specifically referred to the statute as it existed before the amendment. *Ballard, supra* at 330. Therefore, the current version of subsection 22(f) was not before this Court. Although this Court referred to subsection 22(f) in its opinion, it was actually the current subsection 22(f)'s predecessor, the former subsection 22(b), that was before this Court in *Ballard*. Accordingly, we are not bound to follow *Ballard*.

Affirmed.