# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* MGR, Minor.

FOR PUBLICATION
February 27, 2018

Nos. 338286; 340203
Oakland Circuit Court
Family Division
LC No.  2016-842995-AD

Before:  TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

O'BRIEN, J (*concurring in part and dissenting in part*).

In Docket No. 338286, appellants, the adoptive parents, appeal as of right the April 14, 2017 order adjourning proceedings under the Adoption Code, MCL 710.21 *et seq*., pending the resolution of appellee, putative father's, paternity action.  On appeal, appellants present two issues.  First, appellants argue that the trial court committed clear legal error by failing to terminate putative father's parental rights when he failed to appear and contest custody during a hearing scheduled pursuant to MCL 710.39(1) (§ 39 hearing).  Second, appellants argue that the trial court should not have adjourned the adoption proceedings because putative father did not request an adjournment and did not show that an adjournment was warranted by good cause.  In Docket No. 340203, appellants appeal as of right the September 14, 2017 opinion and order determining that putative father's parental rights should not be terminated under MCL 710.39(2). Appellants ask this Court to determine whether the trial court erroneously found that putative father provided substantial and regular support or care to birth mother during her pregnancy such that putative father was subject to MCL 710.39(1), not MCL 710.39(2).  In Docket No. 338286, for the reasons stated in this opinion, I agree with the majority that the appellee "appeared" at the § 39 hearing and that the other issue raised is moot.  However, in Docket No. 340203, I would reverse the trial court's decision and remand for the trial court to evaluate whether putative father's parental rights should be terminated under MCL 710.39(1).  Therefore, I dissent to that portion of the majority's opinion.

## I. DOCKET NO. 338286

In Docket No. 338286, appellants argue that the trial court erroneously declined to terminate putative father's parental rights at the § 39 hearing when putative father failed to personally appear.  Appellants also argue that the trial court abused its discretion by adjourning the adoption proceedings pending resolution of the paternity action.

### A. PUTATIVE FATHER'S PARENTAL RIGHTS

-1-

With respect to appellants' argument that the putative father failed to appear at the § 39 hearing as required by MCL 710.39,[1] appellant's argument is unpersuasive. It is undisputed that putative father did not personally appear for the § 39 hearing. However, his counsel was present. When putative father's counsel indicated to the trial court that he did not know where putative father was and that putative father had been nonresponsive as of late, the trial judge took it upon herself to call putative father in order to protect his "constitutional rights with regard to this contested hearing."[2]

MCR 2.117(B)(1) states:

[a]n attorney may appear by an act indicating that the attorney represents a party in the action. An appearance by an attorney for a party is deemed an appearance by the party. Unless a particular rule indicates otherwise, any act required to be performed by a party may be performed by the attorney representing the party.

---

[1] MCL 710.39 states, in pertinent part:

(1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interest of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.

(2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or [MCL 712A.2]

[2] Notably, the trial court's belief that putative father had constitutional rights regarding the hearing was erroneous. Putative father was not the minor child's legal parent because he had not perfected paternity, and " 'the mere existence of a biological link does not necessarily merit constitutional protection.' " *In re MKK*, 286 Mich App 546, 561; 781 NW2d 132 (2009), quoting *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 193; 740 NW2d 678 (2007). "Further, there has yet to be any determination in this state that a putative father of a child born out of wedlock, without a court determination of paternity, has a protected liberty interest with respect to the child he claims as his own." *In re MKK*, 286 Mich App at 561. An exception exists where a putative father has established a "custodial or supportive relationship" under MCL 710.39(2), which putative father had not done here. *Id.* Accordingly, putative father had no constitutional rights for the trial court to protect.

Putative father's counsel identified himself at the § 39 hearing as representing putative father, which satisfies MCR 2.117(B)(1). When looking solely at the plain language of MCL 710.39(1), nothing in that statute specifically requires putative father to be *present* to contest custody; it only requires that putative father *appear* and contest custody. MCL 710.39(1). When a statute's language is unambiguous, as is the case here, this Court is required to "give the words their plain meaning and apply the statute as written." *In re MJG*, 320 Mich App 310, 321; __ NW2d __ (2017), quoting *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). Therefore, although putative father's failure to physically appear at the § 39 hearing calls into question his sincerity in contesting the adoption proceedings, the appearance of putative father's counsel at the § 39 hearing qualifies as an appearance by putative father pursuant to MCR 2.117(B)(1).[3]

## B. ADJOURNMENT OF ADOPTION PROCEEDINGS

Appellants also argue that the trial court abused its discretion by *sua sponte* adjourning the adoption proceedings pending a resolution in the paternity action initiated by putative father. The Adoption Code provides that an "adjournment or continuance of a proceeding under this chapter shall not be granted without a showing of good cause." MCL 710.25(2). Generally, adoption proceedings should be resolved as quickly as possible, and should be given priority on a trial court's docket. *In re MKK*, 286 Mich App at 550, citing MCL 710.25(1).

Here, the trial court may have abused its discretion by adjourning the adoption proceedings, particularly given that this case had been pending for 10 months at the time of the adjournment, putative father's lack of initiative in seeking a DNA test, and his overall lack of involvement in the child's life. However, this issue is moot. "An issue is moot and generally will not be reviewed if this Court can no longer fashion a remedy for the alleged error." *Madison v Jaso*, 317 Mich App 52, 67 n 9; 893 NW2d 132 (2016), app held in abeyance ___ Mich ___; 889 NW2d 509 (2017).

After filing their claim of appeal, appellants filed two motions in this Court: a motion for immediate consideration and a motion for preemptory reversal. We granted appellants' motion for immediate consideration, but denied the motion for preemptory reversal. *In re MGR*, unpublished order of the Court of Appeals, entered May 19, 2017 (Docket No. 338286); *In re*

---

[3] Also of note, the trial court was easily able to reach putative father via telephone. On that telephone call, putative father made it clear that he had notice of the hearing, and he had intended to be there but was not able to make it due to a lack of transportation. Additionally, putative father was very clear that if a DNA test established that he was the biological father of the minor child, he would be contesting custody.

Appellants argue that, because putative father qualified the circumstances under which he would contest custody—i.e., only if the minor child was his biological child—putative father does not satisfy the requirements of MCL 710.39(1). However, appellants' argument fails where putative father's intent to contest custody was clear. The trial court did not clearly err by declining to terminate putative father's parental rights.

*MGR*, unpublished order of the Court of Appeals, entered May 31, 2017 (Docket No. 338286). We also ordered the trial court not to grant any "further adjournment of the adoption proceedings after June 6, 2017, and the trial court [was to] schedule a hearing pursuant to MCL 710.39 of the Adoption Code forthwith." *In re MGR*, unpublished order of the Court of Appeals, entered May 31, 2017 (Docket No. 338286).

Subsequently, a § 39 hearing commenced on July 14, 2017, but the parties were unable to conclude the hearing on that date. As a result, the trial court further adjourned the hearing until September 29, 2017. Following appellants' motion to enforce our May 31, 2017 order, we further ordered the trial court to "re-commence and conclude [the § 39 hearing] within 14 days of the date of entry of this order." *In re MGR*, unpublished order of the Court of Appeals, entered July 25, 2017 (Docket No. 338286). The § 39 hearing re-commenced on August 7, 2017, and concluded on August 8, 2017. Because appellants appeal focuses on whether it was an abuse of the trial court's discretion to adjourn a hearing pursuant to MCL 710.39 pending the outcome of punitive father's paternity action, and that hearing has been commenced and concluded upon this Court's orders, "this Court can no longer fashion a remedy for the alleged error," and the issue is moot. *Madison*, 317 Mich App at 67 n 9.

## II. DOCKET NO. 340203

In Docket No. 340203, appellants argue that the trial court legally and factually erred in finding that putative father qualified as a "do something" father and determining whether his parental rights should be terminated under MCL 710.39(2).

As the majority points out, since the trial court issued its opinion and order finding that putative father was a "do something" father, the trial court entered an order of filiation with regard to putative father and the minor child. Apparently, relying on an unpublished case from a panel of this Court (*In re LMB*, unpublished opinion per curiam of the Court of Appeals, issued September 14, 2017 (Docket No. 338169), vacated ___ Mich ___ (2017) (Docket No. 156674)), the trial court believed that it was obligated to enter the order. However, in *LMB*, unlike in this case, the order of filiation was entered by an entirely separate trial court that was apparently unaware of the adoption proceedings. Moreover, the *LMB* opinion was subsequently vacated by the Michigan Supreme Court in light of a subsequent order entered by this Court in an appeal from the separate paternity action. In that order, a panel of this Court reversed the trial court's order denying the adoptive parents' motion for a stay pending the adoption appeal and granted the stay. *Sarna v Healy*, unpublished order of the Court of Court of Appeals, entered December 18, 2017 (Docket No. 341211). In this case, the paternity action was before the same trial court, and, based on the public record of the paternity action, it appears that appellants repeatedly attempted to stay those proceedings until this appeal was resolved. However, for whatever reason, the trial court denied appellants' motions.[4] In so doing, it appears that the trial court

---

[4] The trial court's decision to deny appellant's motion to stay is now pending in a separate appeal before this Court. As in *LMB*, this Court's decision in that appeal could result in the Supreme Court vacating the majority's decision in this case. This is the second time this Court has been

entered an order that it knew would effectively prevent appellate review of its decision rather than grant the stay and allow review. Under these circumstances, I would not hold this issue moot. And for the reasons stated herein, I would remand to the trial court to conduct a § 39 hearing under the proper standard of review.

A trial court's determination of whether MCL 710.39(1) or MCL 710.39(2) applies to a putative father is a question of law that this Court reviews de novo. *In re RFF*, 242 Mich App 188, 195; 617 NW2d 745 (2000). A trial court's factual findings are reviewed for clear error. *In re BKD*, 246 Mich App 212, 215; 631 NW2d 353 (2001). A trial court has clearly erred if this Court is left with a definite and firm conviction that a mistake has been made. *Id*.

MCL 710.39 separates putative fathers into two distinct classes: "do nothing" fathers and "do something" fathers. MCL 710.39(1), (2). If a putative father is found to be a "do something" father, his parental rights to the adoptee may only be terminated under MCL 710.51(6) or MCL 712A.2. MCL 710.39(2). A lesser standard applies when terminating the parental rights of a "do nothing father"; the trial court need only make an inquiry into his fitness as a parent and his ability to properly care for the child, and then determine "whether the best interests of the child will be served by granting custody to him." MCL 710.39(1). To qualify as a "do something" father, a putative father must demonstrate that he has either (1) established a custodial relationship with the child, or (2) provided substantial and regular support or care, within his ability to do so, to the mother during her pregnancy, or for either the mother or child after the child's birth. MCL 710.39(2).

During the § 39 hearing in this case, putative father testified that birth mother became pregnant with the minor child in October 2015. In November 2015, putative father rented an apartment for them to live in. Birth mother moved out of the apartment in February 2016, four months into her pregnancy, after which putative father only gave her financial assistance on one occasion. Additionally, putative father only recalled taking birth mother to Planned Parenthood once for prenatal care.

After leaving the apartment, birth mother ceased all communications with putative father. However, putative father testified that he was able to make contact with members of her family on "multiple occasions." Specifically, putative father was in contact with birth mother's sister, two brothers, and mother. In March 2016, birth mother threatened to file a PPO against putative father if he did not stop attempting to contact her directly, but she never followed through on the threat.

In a written opinion after the § 39 hearing, the trial court found that putative father was a "do something" father because he had provided "substantial and regular support or care" within his abilities to birth mother during her pregnancy, "despite the legal obstacles and hurdles placed upon him by [birth mother's counsel and by birth mother]." Specifically, the trial court cited birth mother's threat to file a PPO against putative father as evidence of birth mother having

---

confronted with this situation in the past six months. Guidance from the Supreme Court could greatly benefit the trial courts in presiding over these scenarios in the future.

"impeded" putative father's ability to provide regular and substantial support during her pregnancy.

After reviewing the trial court's opinion, it clearly contains numerous factual and legal errors. First, putative father was not a "do something" father as contemplated by MCL 710.39(2), and the trial court's factual finding that birth mother impeded putative father's efforts to provide substantial and regular support and care during her pregnancy, as required under MCL 710.39(2), was clearly erroneous. *In re BKD*, 246 Mich App at 215.

In 1998, the Legislature amended MCL 710.39 and increased the supportive element of MCL 710.39(2) from "support or care" to "substantial and regular support or care." MCL 710.39(2), as amended 1998 PA 94. The plain language of MCL 710.39(2), as amended, requires substantial and *regular* support or care, which suggests that the Legislature intended for putative fathers to provide support or care throughout a birth mother's pregnancy.

This Court previously concluded that a putative father's desire or efforts to be involved in a birth mother's pregnancy does not "constitute substantial and regular support or care for the purposes of" MCL 710.39(2). *In re RFF*, 242 Mich App at 200. This Court also found that merely filing a notice of intent to claim paternity in an adoption action does not constitute regular support or care under MCL 710.39(2). *Id.* at 201. In sum, this Court has made it clear that, in order to be considered a "do something" father under MCL 710.39(2), a putative father must actually do something on a regular basis.

The record is clear that birth mother moved out of the couple's apartment during the fourth month of her pregnancy. Although putative father had been supporting birth mother while they were living together, once she moved out, putative father only provided financial assistance on one occasion. In March 2016, birth mother told putative father that she was unwilling to allow him to have custody of their child, and that she was considering adoption. Afterwards, the two had no communication until June or July of 2016, after the minor child was born and placed with appellants.

Although birth mother threatened to file a PPO against putative father, she never did. As such, during the last five months of birth mother's pregnancy, putative father could have sent money or necessities to her directly, or through other channels such as birth mother's family with whom putative father had remained in contact. There is no evidence to suggest that putative father was threatened with a PPO if he continued to communicate with birth mother's family. Further, putative father certainly had the financial means to provide at least some regular support to birth mother during her pregnancy given putative father's testimony that he was employed until shortly after the minor child's birth. Putative father's testimony establishes that he had the means to provide regular support or care, yet he *chose* not to do so. Based on the foregoing, the trial court's finding that birth mother impeded putative father's ability to provide substantial and regular support or care during her pregnancy is wholly unsupported by the record and was clearly erroneous.

Putative father also failed to provide substantial care or support to the minor child after the child's birth. Putative father testified that, after the minor child was born, he purchased clothing, diapers, and other necessities for the minor child, and even set up a "GoFundMe page"

to help pay for his attorney fees and things that the minor child would need. However, putative father never sent those necessities to birth mother, or to the adoptive parents, which he could have done through the adoption agency with whom putative father had been in contact.

It is also noteworthy that, when putative father was told that he could have supervised visits with the minor child, he declined because he did not want "strangers staring down at me while . . . I get to know my son." Putative father further testified that he was also offered an opportunity to meet the minor child's adoptive family "somewhere in the public [to] allow [him] a couple of hours with [his] son," but he declined that invitation as well. Based on the foregoing, the trial court clearly erred by concluding that father provided substantial and regular support or care within his abilities to birth mother, or to the minor child after the minor child's birth, as contemplated by MCL 710.39(2).

The trial court also committed legal error when it considered putative father's actions in bringing legal proceedings as "support" for the purposes of MCL 710.39(2). The trial court found that putative father was an "active and vigilant participant in both the paternity and adoption actions," despite the "obstacles and hurdles" placed in his way by birth mother and her counsel, i.e. birth mother's threat of a PPO. The trial court opined that putative father's participation in the legal proceedings "demonstrate [that] he provided substantial and regular care within his ability."

However, as previously noted, merely filing a notice of intent to claim paternity in an adoption action does not constitute regular support or care under MCL 710.39(2). *In re RFF*, 242 Mich App at 201. As such, putative father's participation in the paternity action and the adoption proceedings should not have been considered when determining whether putative father fell under MCL 710.39(1) or (2). The trial court's reasoning doing so was legally erroneous.

Additionally, the trial court's ruling in this regard was factually erroneous. At the March 24, 2017 hearing, putative father's own counsel informed the trial court that he did not know where putative father was. Putative father's counsel informed the trial court that in the month preceding that hearing, putative father had not responded to any letters or phone calls regarding this matter, and that putative father had not "shown a lot of interest in progressing with his case recently." The trial court's factual determination that putative father had been an "active and vigilant participant" during these proceedings was clearly erroneous.

The trial court also committed legal error by relying on caselaw predating the amendment of MCL 710.39. In issuing its opinion, the trial court referenced *In re Dawson*, 232 Mich App 690, 694; 591 NW2d 433 (1998), which lists several factors previously used by trial courts to evaluate whether a putative father came under MCL 710.39(1) or MCL 710.39(2) prior to the amendment of MCL 710.39. See *In re Dawson*, 232 Mich App at 694, citing *In re Gaipa*, 219 Mich App 80, 85-86; 555 NW2d 867 (1996). The trial court acknowledged that much of the case law predating the amendment of MCL 710.39 was now "irrelevant," but it went on to opine that the "factors [enumerated in *In re Dawson*] remain instructive." Specifically, the trial court relied on language from *In re Dawson* where trial courts were instructed to consider whether "the mother impeded the father's efforts to provide her with support." *In re Dawson*, 232 Mich App at 694.

Given that MCL 710.39(2) has been amended to include a more stringent support obligation since this Court's decision in *In re Dawson*, those considerations, including whether birth mother "impeded the father's efforts to provide her with support," are now obsolete. As discussed, to be considered a "do something" father under MCL 710.39(2), putative father must have actually done something on a regular basis. Here, putative father did nothing during the last five months of birth mother's pregnancy. That the trial court considered those factors constituted legal error.

Based on the foregoing, I would conclude that the trial court improperly assessed whether putative father's parental rights should be terminated under MCL 710.39(2), and would remand to the trial court to determine whether his rights should be terminated under the proper standard found in MCL 710.39(1).

For these reasons, I concur with the majority in Docket No. 338286, but respectfully dissent to the majority's decision in Docket No. 340203.

/s/ Colleen A. O'Brien