*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AMB, Minor.

UNPUBLISHED
December 17, 2024
10:57 AM

No. 368475
Oakland Circuit Court
Family Division
LC No. 22-000348-AF

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating his parental rights to his minor child AMB under MCL 710.39(1). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

In April 2022, two petitions were filed regarding AMB. AMB's mother filed a petition to identify AMB's putative father and determine or terminate his rights because AMB's mother intended to release her parental rights. See MCL 710.36. AMB's guardian/maternal grandmother[1] also filed a petition requesting that she be allowed to adopt AMB once the court terminated the parents' parental rights under MCL 710.39. During the proceedings, a paternity test confirmed that respondent was AMB's father. Respondent opposed the petition to adopt and stated that he was seeking custody of AMB. Following a bench trial, however, the trial court found that respondent had an extensive criminal record, had threatened and stalked petitioner, had violated no-contact orders prohibiting him from contacting petitioner, and had been incarcerated for nearly the entirety to AMB's life. Moreover, the court found that respondent had never met AMB and had never provided her with care or support. Finally, the court found that respondent had not provided AMB's mother with support either while she was pregnant with AMB or afterward. Rather, the extent of his support was to attend a single medical appointment. Given those findings,

---

[1] The maternal grandmother obtained guardianship of AMB in July 2018 when AMB was 2 months old.

the court concluded that termination of respondent's parental rights was warranted under MCL 710.39(1).

Proceeding under MCL 710.39(1), the trial court found that none of the best interest factors set forth in MCL 710.22(g) favored respondent. Specifically, the court found that there was no love or emotional connection between respondent and AMB; that respondent was unable to provide AMB with food, clothing, education, medical care, or housing because he was incarcerated and would be incarcerated for the foreseeable future; that AMB had lived in a stable home environment with petitioner for her entire life and she deserved permanence; that respondent is not morally fit to care for a child because of his harassment, stalking, threatening letters, violations of no-contact orders, and criminal record; that respondent had mental health issues; and that AMB wanted to continue living with petitioner and be adopted. The court, therefore, entered an order terminating respondent's parental rights and permitting petitioner to adopt AMB. This appeal follows.

## II. TERMINATION OF PARENTAL RIGHTS UNDER THE ADOPTION CODE

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by finding termination proper under MCL 710.39(1) because he sent money and letters to AMB. Alternatively, he contends that termination was not proper because he was prevented from establishing a custodial relationship with AMB by petitioner and by AMB's mother. The Michigan Adoption Code, MCL 710.21 *et seq*., is in "derogation of the common law" and must be strictly construed. *In re Dawson*, 232 Mich App 690, 696; 591 NW2d 433 (1998). Questions of statutory interpretation are reviewed de novo. *In re AGD*, 327 Mich App 332, 338; 933 NW2d 751 (2019). "A trial court's factual findings during a proceeding to terminate parental rights under the Adoption Code are reviewed for clear error." *Id*. "A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*.

### B. ANALYSIS

The trial court proceeded under MCL 710.39(1), which provides:

(1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.

Respondent, however, argues that the court should have proceeded under MCL 710.39(2), which provides:

(2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA.

In support, respondent contends that he provided support to AMB's mother during a period of time while she was pregnant by paying her rent. He also argues he went to one medical appointment with AMB's mother, sent letters and money, and tried to have his own mother get involved in AMB's life. However, "good intentions and attempts to establish a custodial environment" are not enough to permit a trial court to proceed under MCL 710.39(2), regardless of "how many or sincere his failed attempts were." *In re BWJ*, 346 Mich App 183, 194; 12 NW3d 14 (2023). Respondent testified that the money he attempted to send to petitioner for AMB was returned to his prison account and the money never reached either petitioner or AMB. In addition, AMB's mother testified that she never had her rent paid for by respondent, and was instead harassed, threatened, and abused by him. Both AMB's mother and petitioner sought protection from respondent through no-contact orders because of respondent's repeated threats. Moreover, it is undisputed that respondent never had any contact with AMB. Considering the record in this case, the trial court did not clearly err by finding that respondent had never established a custodial relationship with AMB and had not provided substantial or regular support to either AMB or to her mother while she was pregnant with AMB. Therefore, the trial court did not err by proceeding under MCL 710.39(1).

Respondent next asserts that the trial court's best-interests findings were clearly erroneous. The best-interest factors are set forth in MCL 710.22(g), which provides that the court should consider:

(*i*) The love, affection, and other emotional ties existing between the adopting individual or individuals and the adoptee or, in the case of a hearing under section 39 of this chapter, the putative father and the adoptee.

(*ii*) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, the putative father to give the adoptee love, affection, and guidance, and to educate and create a milieu that fosters the religion, racial identity, and culture of the adoptee.

(*iii*) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, the putative father, to provide the adoptee with food, clothing, education, permanence, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(*iv*) The length of time the adoptee has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(*v*) The permanence as a family unit of the proposed adoptive home, or, in the case of a hearing under section 39 of this chapter, the home of the putative father.

(*vi*) The moral fitness of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, of the putative father.

(*vii*) The mental and physical health of the adopting individual or individuals or, in the case of a hearing under section 39 of this chapter, of the putative father, and of the adoptee.

(*viii*) The home, school, and community record of the adoptee.

(*ix*) The reasonable preference of the adoptee, if the adoptee is 14 years of age or less and if the court considers the adoptee to be of sufficient age to express a preference.

(*x*) The ability and willingness of the adopting individual or individuals to adopt the adoptee's siblings.

(*xi*) Any other factor considered by the court to be relevant to a particular adoption proceeding, or to a putative father's request for child custody.

The court found that none of the best-interest factors favor respondent. The findings are not clearly erroneous. Respondent and AMB have never met and there are no emotional ties between them. Additionally, respondent is incarcerated and will not be released in the immediate future. As a result, he is not in a position to provide AMB with love or guidance, nor is he able to provide food, clothing, education, medical care, or permanence. Indeed, respondent testified that he is not in a position to take care of his child. On the other hand, AMB has lived with petitioner her entire life and had all her needs met. She is doing well in school and has stated she would like to remain in petitioner's care. Next, the court's findings that respondent lacks moral fitness is supported in the record, which reflects that respondent has a lengthy criminal history, which includes improper and threatening contact with petitioner in violation of a no-contact order. Additionally, respondent testified that, because he had convictions for "accosting for immoral purposes," extortion, and possession of "child paraphernalia," he is required to register as a sex offender in Michigan. It is also undisputed that respondent has been diagnosed with "frontal lobe displacement," which he testified can cause him to black out when he experiences strong emotions. Finally, petitioner is able to provide love, care, support, and permanence to AMB. In light of the record, the trial court did not err by finding the best-interest factors favored termination of respondent's parental rights.

Lastly, respondent argues that his parental rights should not have been terminated because petitioner and AMB's mother prevented him from establishing a custodial relationship with AMB. However, the record reflects that respondent created his own barriers to establishing a custodial relationship by acting in a manner that necessitated no-contact orders, such as sending threatening letters to both petitioner and to AMB's mother. He then violated no-contact orders issued for their protection and was convicted of stalking petitioner. Thus, although a mother's attempts to impede a putative father's efforts to provide support may be considered by the trial court when determining

whether the father has provided reasonable care under the circumstances, *Dawson*, 232 Mich App at 694, that fact is not dispositive in this case.

Affirmed. Petitioner may tax costs as the prevailing party. MCR 7.219(A).

/s/ Adrienne N. Young
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney