# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LRH, Minor.

UNPUBLISHED
March 12, 2015

No. 322981
Macomb Circuit Court
Family Division
LC No. 2013-019340-AD

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Respondent appeals the trial court's order terminating his parental rights to the minor child pursuant to § 39 of the Adoption Code, MCL 710.39. We affirm.

Before a child can be adopted, the parents must release their parental rights, MCL 710.28(1)(a), or consent to the adoption, MCL 710.43(1)(a). If a child is born out of wedlock and the release or consent of the father cannot be obtained, the child cannot be adopted until the father's parental rights are terminated. MCL 710.31(1). The mother of the child can petition the court for a hearing "to determine whether the child was born out of wedlock, to determine the identity of the father, and to determine or terminate the rights of the father" under § 37 or § 39 of the Adoption Code. MCL 710.36(1). If the putative father is identified and he is interested in custody of the child, the court must determine his interests under § 39. MCL 710.39(1).

MCL 710.39 "classifies putative fathers into two groups, each having a different level of legal protection for their parental rights." *In re BKD*, 246 Mich App 212, 216; 631 NW2d 353 (2001). The statute provides, in relevant part:

> (1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.

> (2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days

-1-

before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA.

Section 39(2) requires the court to consider two different types of involvement by the putative father: (1) whether he established a custodial relationship with the child, or (2) whether he provided substantial and regular support or care commensurate with his ability (a) for the mother during her pregnancy, or (b) for the mother or child after the child's birth during the 90 days before he was served with notice of the hearing. If the putative father has the requisite custodial or supportive relationship, he is entitled to the same legal protection of his parental rights as a legal father, *In re BKD,* 246 Mich App at 216, and his parental rights can only be terminated under § 51(6) of the Adoption Code, MCL 710.51(6), or under § 19b of the Juvenile Code, MCL 712A.19b. MCL 710.39(2). The trial court determined that § 39(2) was not applicable and terminated respondent's parental rights under § 39(1).

Respondent first raises a claim of procedural error. The trial court conducted the hearing over two days. At the end of the first day, it indicated that it would determine whether respondent came within the provisions of § 39(2), but it did not place a ruling on the record. At the end of the second day, the trial court took the matter under advisement, following which it determined and terminated respondent's parental rights. Respondent contends that the trial court erred in continuing the hearing without first determining whether § 39(2) applied. Because respondent did not request a ruling on his status or object to the trial court's failure to determine his status before proceeding with the second hearing, this issue is not preserved. "Review of an unpreserved error is limited to determining whether a plain error occurred that affected substantial rights." *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008).

As discussed earlier, if the putative father has the requisite custodial or supportive relationship under § 39(2), his rights cannot be terminated under § 39; therefore, it is unnecessary to consider whether granting him custody of the child is in the child's best interests. If the putative father does not come under § 39(2) but requests custody of the child, then the court must determine his fitness and ability to be a parent to the child and whether granting him custody of the child is in the child's best interests. Therefore, it is clear that the trial court must first determine the putative father's status and find that § 39(2) is inapplicable before it determines the child's best interests. But nothing in the Adoption Code requires the trial court to conduct a bifurcated hearing and make an express determination regarding the putative father's status before taking proofs regarding the child's best interests. Rather, the court is authorized to conduct "a hearing" to determine or terminate the putative father's rights, ascertain whether the child was born out of wedlock, and to determine the identity of the child's father. MCL 710.36(1). Under these facts, respondent has not shown a plain error. Further, respondent has not shown that his substantial rights were affected by any error because the trial court did in fact address § 39(2) and found that it was not applicable before it addressed and decided the child's best interests. Therefore, respondent is not entitled to relief on the basis of this unpreserved issue.

Respondent next takes issue with the trial court's determination that § 39(2) was inapplicable. The trial court's determination whether § 39(1) or § 39(2) is applicable is a question of law that we review de novo on appeal. *In re RFF*, 242 Mich App 188, 195; 617

NW2d 745 (2000). The trial court's findings of fact are reviewed for clear error. *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 651; 662 NW2d 424 (2003). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court found that respondent did not have a custodial relationship with the child because he had visited her six or seven times at most during the 18-month period between her birth and her transfer from the birth mother's home to the prospective adoptive mother's home. The trial court also found that respondent did not have a supportive relationship with the mother or the child because he had never provided any financial support to either when he was working. Respondent does not challenge the trial court's factual findings or its determination that his limited contact with the child and his failure to provide any financial support or other care took him outside the provisions of § 39(2). Instead, he argues that his failure to establish a custodial or supportive relationship with the child should be excused because the birth mother or the child's maternal grandmother impeded his efforts.

Respondent relies on a passage from *In re Dawson*, 232 Mich App 690, 694; 591 NW2d 433 (1998), which in turn relied on *In re Gaipa*, 219 Mich App 80, 85-86; 555 NW2d 867 (1996). When those cases were decided, the supportive element of § 39(2) required the court to consider whether the putative father had "provided support or care." The *Gaipa* Court determined that "support or care" meant "reasonable support or care under the circumstances of the case" and provided a list of factors to be considered in determining whether the support or care was reasonable under the circumstances, one of which was whether the mother "impeded the father's efforts to provide her with support[.]" *Id.* at 86. But the Legislature has made it clear that "reasonable support or care under the circumstances" is no longer the relevant standard by amending the statute to replace "support or care" with "substantial and regular support or care" commensurate with the father's ability. 1998 PA 94. Therefore, the *Gaipa* factors are not relevant to the determination of the putative father's supportive relationship under the current version of § 39(2). In any event, the trial court specifically found that the birth mother and the maternal grandmother did not thwart respondent's efforts to establish a custodial or supportive relationship with the child. Rather, the court found that respondent ceased contact with the family because he did not agree with the grandmother's decision to restrict visitation to times when she was home. Although that finding is contrary to respondent's testimony, it is supported by other witnesses' testimony, so it is not clearly erroneous. "It is not for this Court to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009).

We find no merit to respondent's contention that his failure to establish a custodial or supportive relationship with the child should be excused because the birth mother concealed her pregnancy from him and would not cooperate with his efforts to obtain a DNA test after the child was born. This Court rejected similar arguments in *In re RFF*, 242 Mich App at 199-200 (there is not "a deceived father exception to the requirement that a father provide substantial and regular care and support to the mother during pregnancy in order to come within subsection 39(2)") and *In re BKD*, 246 Mich App at 225 (that the putative father has "doubts concerning paternity" is not "a unique condition that should excuse him from having to offer support").

Respondent lastly takes issue with the trial court's decision that it was not in the child's best interests to grant him custody. If the court determines that a putative father has not established a custodial relationship with the child or a supportive relationship with the mother or the child, the court must

> inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the child's best interests to grant custody to the putative father, the court shall terminate his rights to the child. [MCL 710.39(1).]

The best-interest factors are set forth in MCL 710.22(g)(*i*) – (*xi*). The trial court's findings of fact regarding the best-interest factors are reviewed for clear error. *In re BKD*, 246 Mich App at 215. "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*.

The first factor is "[t]he love, affection, and other emotional ties existing between . . . the putative father and the adoptee." MCL 710.22(g)(*i*). The trial court found that this factor did not favor respondent because he did not have any real bond with the child, only a desire to establish one. Respondent argues that he demonstrated his love and affection for the child by visiting with her when he could, by trying to visit with her at other times, and by his efforts to obtain a DNA test. Those efforts showed that respondent wanted to establish a relationship with the child, not that one actually existed. Because respondent spent no more than 14 hours with the child over the course of her lifetime, the trial court did not clearly err in finding that there were no strong emotional ties between respondent and the child worth preserving. Therefore, the trial court did not clearly err in finding that this factor did not favor respondent. See *In re BKD,* 246 Mich App at 219 (this factor does not favor the putative father when no bond exists between him and the child).

The second factor is "[t]he capacity and disposition of . . . the putative father to give the adoptee love, affection, and guidance, and to educate and create a milieu that fosters the religion, racial identity, and culture of the adoptee." MCL 710.22(g)(*ii*). The trial court found that this factor did not favor respondent because his "lack of an education, home and job along with his multiple convictions and demonstrated willingness to break the law to advance his personal interests evidence an unstable and combustible lifestyle which is not conducive to fostering a positive environment to cultivate love, affection, guidance, and education." Respondent does not deny that his personal circumstances were less than favorable to parenting, but he notes that he expressed an intention to improve himself. The trial court, however, considered this and determined that respondent's known conduct and present circumstances were more relevant than his future hopes. Respondent initially expressed interest in the child but quickly gave up on a relationship with her because he could not get along with the child's mother. He continued to pursue a criminal lifestyle, committing offenses even after these proceedings were initiated, and was incarcerated. This conduct belies a capacity to meet the needs relevant to this factor; therefore, the trial court did not clearly err in finding that this factor did not favor respondent.

The third factor is "[t]he capacity and disposition of . . . the putative father[ ] to provide the adoptee with food, clothing, education, permanence, medical care or [its equivalent], and

other material needs." MCL 710.22(g)(*iii*). The trial court found that this factor did not favor respondent because he did not have a valid driver's license, a job, a permanent residence, or an education, and was currently incarcerated. Respondent does not deny this; he claims that he had arranged for housing and employment upon his release from jail. Again, the trial court considered that testimony but found it unpersuasive. It found that respondent did not have a permanent residence, which was supported by respondent's testimony that he had moved from place to place since he was 15 years old and only intended to remain at his mother's house for six months. The court found that respondent did not maintain consistent employment and had not provided evidence, such as a letter from his former employer, confirming his future prospects. Finally, it noted that despite respondent's intentions, the fact remained that he had never provided for the child's material needs when he had the ability to do so. The trial court did not clearly err in finding that this factor did not favor respondent.

The fourth factor is "[t]he length of time the adoptee has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 710.22(g)(*iv*). The trial court did not make an express finding regarding this factor, noting only that the child had lived with the prospective adoptive mother, EM, for nearly two years. Respondent does not dispute that or deny that the child's present environment was stable and satisfactory. Although he argues that uprooting the child would not necessarily be harmful because the child would easily forget her current home and EM and could easily adapt to a new home with respondent, nothing in the record supports those assertions. Instead, the record shows that the child had an established home with EM, "the only person that she knows as her mother," and was doing well there. She had forged relationships with EM's family, went to church, was in school, and had made friends. On the other hand, the child had no relationship with respondent. The evidence supported a finding that maintaining the continuity of the child's environment was desirable.

The fifth factor is "[t]he permanence as a family unit of . . . the home of the putative father." MCL 710.22(g)(*v*). The trial court found that this factor did not favor respondent because he had not maintained a stable or permanent home for years, and he did not intend to stay in the home in which he planned to live upon his release from jail. Respondent does not dispute the trial court's findings. He argues only that this factor favors him because he had a viable plan for improving and managing his life. That is not the focus of this factor, which "exclusively concerns whether the family unit will remain intact[.]" *Fletcher v Fletcher,* 200 Mich App 505, 517; 504 NW2d 684 (1993), rev'd in part on other grounds 447 Mich 871 (1994) (discussing the corresponding best-interest factor in the Child Custody Act, MCL 722.23(e)). Because respondent had not maintained a permanent family unit for several years and did not intend to maintain one with the child and instead planned for them to live with his mother and sisters for a short time and then move, the trial court did not clearly err in finding that this factor did not favor respondent.

The sixth factor is "[t]he moral fitness . . . of the putative father." MCL 710.22(g)(*vi*). The trial court found that this factor did not favor respondent because he had "an extensive criminal history, for which he is currently incarcerated," and had even gotten into further trouble while in jail. Respondent contends that the trial court erred in concluding that his criminal history was "extensive" because he was never convicted of any serious offenses. "Extensive" means "of great extent" or "great in amount, number, or degree." *Random House Webster's College Dictionary* (1997). Considering the numerous offenses in which respondent has been

-5-

involved, the trial court's description was apt. Further, "morally questionable conduct relevant to one's moral fitness as a parent" includes "illegal or offensive behaviors." *Fletcher v Fletcher,* 447 Mich 871, 887 n 6; 526 NW2d 889 (1994) (discussing the corresponding best-interest factor in the Child Custody Act, MCL 722.23(f)). While respondent's intentions for the future indicate that he may in time become morally fit, his repeated violations of the law over the years, even after he was jailed, showed that his moral fitness was lacking. The trial court did not clearly err in finding that this factor did not favor respondent.

The seventh factor is "[t]he mental and physical health . . . of the putative father, and of the adoptee." MCL 710.22(g)(*vii*). The trial court found that although both respondent and the child were in good health, this factor was neutral. We agree with respondent that this factor actually favors him. All of the statutory factors relate to one's fitness as a parent. *Fletcher,* 447 Mich at 886-887. If respondent is in good health, he does not have any physical or mental limitations that would impede his ability to function as a parent. Likewise, if the child is in good health, she does not have any special needs that respondent may not be able to meet. The trial court erred in finding that this factor was neutral. See *In re Zimmerman,* 277 Mich App 470, 480, 477-478, 484; 746 NW2d 306 (2008), aff'd in part and vacated in part on other grounds 480 Mich 1143 (2008) (upholding trial court's determination that factor (*vii*) weighed in the putative father's favor based on the absence of any health problems).

The trial court found that the remaining factors, MCL 710.22(g)(*viii*)-(*xi*), were inapplicable. Respondent agrees that the last two factors were not applicable, but he argues that the eighth and ninth factors were neutral rather than inapplicable. Either way, they did not favor respondent's request for custody, so the trial court did not clearly err in finding that they were not relevant. Because six of the seven relevant factors did not favor respondent, the trial court did not err in finding that granting custody to respondent was not in the child's best interests.

We affirm.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello